618 S.W.2d 808 (1981)
L. M., Appellant,
v.
The STATE of Texas, Appellee.
No. 17940.
Court of Civil Appeals of Texas, Houston (1st Dist.).
May 7, 1981.
Rehearing Denied June 18, 1981.
*809 Logene L. Foster, Sugar Land, for appellant.
Fred M. Felcman, Bernard Hobson, Richmond, for appellee.
Before COLEMAN, C. J., and PEDEN and SMITH, JJ.
PEDEN, Justice.
L. M. is charged with the murder of 68-year-old Estanislado Zaragosa, at a time when L. M. was fifteen years and five months of age. She appeals from a judgment in which the juvenile court, sitting without a jury, waived its exclusive original jurisdiction and transferred her case to district court. The appellant contends that the juvenile court did not comply with the mandatory provisions of Section 54.02(d), Texas Family Code, in that the diagnostic study it ordered was so incomplete as to be invalid and that the evidence adduced at the certification hearing was legally or factually insufficient under Section 54.02 to support the order of waiver and transfer. We affirm.
The appellant was charged with a violation of Section 19.02 of the Texas Penal Code. The State alleged in its petition for waiver of jurisdiction and transfer to criminal court that the appellant and others entered Zaragosa's home without his consent, committed theft, and caused his death by hitting him on the head with a pipe.
Section 54.02 of the Family Code provides that the juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court for criminal proceedings if the child is alleged to have committed a felony and was aged fifteen or older at the time of the alleged offense, and if "after full investigation and hearing the juvenile court determines that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings." (emphasis added) Subsection d states that "[p]rior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense."
In its order waiving juvenile jurisdiction the trial court in our case recited:
a) [T]he Court ... ordered and obtained a diagnostic study, social evaluation, a full investigation of the child, her circumstances and the circumstances of the alleged offense;
b) After full investigation and hearing at which hearing the child, her counsel, *810 mother and father were present in open court, the court finds that the said [L. M.] is charged with the violation of a penal law of the grade of felony, if committed by an adult, to wit: Murder, First Degree Felony, that she was 15 years of age at the time of the commission of the alleged offense, ... and that because of the seriousness of the offense, the welfare of the community requires criminal proceedings;
c) In making that determination the court has considered among other matters:
1. whether the alleged offense was against person or property, with the greater weight in favor given to offense against the person;
2. whether the offense was committed in an aggressive and premeditated manner;
3. whether there is enough evidence upon which the Grand Jury may be expected to return an indictment;
4. the sophistication and maturity of the child;
5. the record and previous history of the child; and
6. the prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
In addition the trial judge specifically found that based on the social evaluation and other evidence in the record, the appellant was of sufficient sophistication and maturity to be tried as an adult, to have culpability and to assume responsibility for her conduct, and to assist in the preparation of her defense; that the appellant planted the seed of committing a criminal act upon the victim in the minds of the other participants and set the alleged criminal episode in motion with her premeditation and suggestion; that the alleged murder was a callous and wanton act by the alleged participants against the person of another and that the appellant must accept responsibility for the aggression even though she did not strike the fatal blow to the victim; that the appellant has been referred to the juvenile authorities several times in the year prior to the hearing for offenses of increasing seriousness, e. g., truancy to criminal mischief to alleged murder; and that the likelihood of rehabilitation of the child through procedures, services, and facilities available to the juvenile court is very slim, if not nonexistent.
The first point of error is "that the trial court erred in not ordering a valid diagnostic study, social evaluation, and full investigation of the child as required by Tex.Fam. Code Ann. § 54.02(d)."
It is clear that the trial judge did order "a complete diagnostic study, social evaluation, and full investigation of the subject child ..., her circumstances, and the circumstances of the alleged offense" as required by Section 54.02(d). In her argument under this point, the appellant's position is that the State's failure to introduce in evidence the testimony of psychologist Ronald Smith, Ph.D., deprived the court of such a major part of the diagnostic study it ordered as to render the study invalid.
At the request of the juvenile officer, Dr. Smith first examined the appellant during one of his regularly scheduled weekly visits to the juvenile office. He again examined her after having seen the court's order that a complete diagnostic study be done. He did not advise the appellant that anything she related to him during the examinations would not be privileged, and he did release all such information to the juvenile office. At the certification hearing the appellant's attorney called Dr. Smith to testify in support of her motion to suppress his testimony concerning any of his communications with L. M. during the psychological examinations. L. M.'s attorney argued that such communications were confidential under Tex.Rev.Civ.Stat.Ann. art. 5561h and that no exception to the privilege existed. He invoked the privilege of confidentiality and suggested that Dr. Smith could be sued for violation of the appellant's confidentiality. The State first argued that Article 5561h was inapplicable to a certification hearing where the juvenile's communications to a *811 psychologist were offered to assist in determining sophistication and maturity, not mental health, and that even if the statute did apply, the court's order for a diagnostic study brought the communication between L. M. and Dr. Smith within an exception to the rule. Following an unreported discussion in the judge's chambers, the State's attorney stated, "I'm not going to ask him to testify. If there is any slim chance of any type of jeopardy I won't even ask him to testify." The diagnostic study admitted in evidence did not include the psychologist's report, since no written report was offered in evidence and since Dr. Smith was not required to testify.
Although it is clear that the requirements of section 54.02(d) are mandatory and must be followed strictly, I___ L___ v. State, 577 S.W.2d 375 (Tex.Civ.App.1979, no writ); In re J. R. C., 522 S.W.2d 579 (Tex. Civ.App.1975, writ ref'd n. r. e.), the appellant has cited no case, and we have found none, which defines "complete diagnostic study." In the case of I___ L___ v. State, supra, it was held that reversal of the certification order was not required by the fact that the appellant had not received a physical examination and had not been interviewed by a psychologist as part of the diagnostic study and that the trial court did not err in admitting into evidence the study attacked by the appellant as insufficient. The diagnostic study which the court considered sufficient in I___ L___ consisted of 1) a psychiatrist's report, 2) a social evaluation and investigation by a court investigator, 3) monthly progress reports on the appellant, compiled during a one-year stay at the Texas Youth Council, 4) an intelligence test made at least one year prior to the hearing during the appellant's stay at the Youth Council, and 5) a psychiatric examination conducted less than a month before the hearing and testimony by the examining psychiatrist that in his opinion a complete diagnostic study had been made and no further testing was needed.
In our case the report submitted "in accordance with the order of Diagnostic Study" by Javier Vela, Fort Bend County Juvenile Probation Officer, recites that Dr. Smith administered psychological tests to the appellant which are attached and made a part of such report, but no such attachments are in the record. The "School Report" section of Vela's study states that Dr. Smith's psychological testing of the appellant included a non-academic type of intelligence test which showed a near-normal intelligence (culture fair I.Q. 97). No psychiatric examination was made, and no psychiatrist testified. The appellant's mother testified that the appellant is just acting like any other fifteen-year-old, not older or younger, that she is in the tenth grade and has never failed a grade, and that her grades are average.
The statutory requirement of a complete diagnostic study bears upon the maturity and sophistication of the child and relates to the questions of culpability, responsibility for conduct, and ability to waive rights intelligently and assist in the preparation of a defense. See, generally, In re C. L. Y., 570 S.W.2d 238, 240 (Tex.Civ.App. 1978, no writ); R. E. M. v. State, 541 S.W.2d 841 (Tex.Civ.App.1976, writ ref'd n. r. e.). In the case of In re C. L. Y., supra, Chief Justice Coleman noted for this court that evidence that a sixteen-year-old robbery suspect functioned as an illiterate and was mildly retarded raised a serious question as to whether he was sufficiently mature and sophisticated to understand the nature of his conduct. We held, however, that the quality of sophistication and maturity was only one matter among many which the court must consider and that the findings on the other factors were sufficient to support the transfer decision. We further stated that where the juvenile court has considered all the matters required by section 54.02, the appellate court is not warranted in substituting its judgment for that of the juvenile court and the best interests of the juvenile and society would be served by waiving jurisdiction.
A reviewing court may not presume that a full investigation has been made in a juvenile transfer proceeding, Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), but the qualitative content of a diagnostic study, rather *812 than a mere quantitative "check-list" of included items, is the paramount concern of the juvenile court.
In addition to the information already discussed, the diagnostic study in this case included extensive family data and history; five previous referrals of the appellant for truancy, curfew violations, and criminal mischief; that the appellant's appearance is attractive, overly mature and well-developed for her age; that the appellant had a normal childhood, has no history of any serious physical complaints or hospitalizations, and had her last physical examination less than a year earlier; that the appellant is the oldest child living at home and is considered by her mother mature enough to baby-sit with her younger siblings; that the mother suspects that the appellant is sexually active and has given her sexual instructions; that in the opinion of three long-time neighbors of the appellant she generally is undisciplined, out late at night, unsupervised, and associates with older and disreputable people; that the appellant has been sent to the principal's office for discipline on several occasions during the previous year; and that in the opinion of the assistant principal at her school the appellant is a stealthy individual, will try to get away with as much as possible, has leadership qualities among her peers, and is wise enough to vindicate herself when suspected of illegalities.
The evaluation and recommendation of Probation Officer Vela, who had handled all but the fourth of the appellant's previous referrals, was that she is a sophisticated, mature, and streetwise young lady capable of playing an active role in the alleged offense; that she has antisocial tendencies, is impulsive and manipulative; that in his conversation with her following the murder, she did not appear to be remorseful; that she tends to associate with people who have come in contact with law enforcement agencies, is aware of the criminal elements in society and able to take care of herself during interactions with people involved in antisocial behavior; and that the appellant knows right from wrong.
While the diagnostic study which we know was considered by the juvenile court undoubtedly would have been more complete if Dr. Smith had been allowed to testify or if his clinical report on the appellant had been introduced in evidence, we cannot say that the diagnostic study in evidence in this case was so incomplete as to be rendered invalid.
We also note that it was stated in R. E. M. v. State, 541 S.W.2d 841 (Tex.Civ.App. 1976, writ ref'd n. r. e.) that in that case the lack of a complete diagnostic study had been occasioned by the appellant's refusal to cooperate and submit to interviews, so the report in the file was as complete as was possible under the circumstances. In that situation, the court said it was not inclined to hold that the statute requires that which the appellant's attitude made impossible.
In our case the report of the psychological testing of the appellant was available to the trial judge, but it was not offered in evidence because of the appellant's objections.
The trial court's authority to consider a somewhat similar report is reviewed in Green v. Remling, 608 S.W.2d 905 (Tex. 1980). In that case the trial judge considered a social study prepared and filed, in accordance with § 16.031 of the Texas Family Code, in an adoption case. The Supreme Court held that in that non-jury trial, even though the report was not formally admitted into evidence, the trial judge could consider it and could use his discretion in determining the weight to be given to it.
It is not clear from the record in our case whether the trial judge did consider the report of the psychologist.
We hold that the appellant's first point does not present reversible error.
The appellant's other point of error is that there was no evidence or factually insufficient evidence to support the order waiving jurisdiction and transferring her to criminal court. As noted earlier, the trial court judge recited in the judgment that he considered each of the statutory elements *813 set forth in section 54.02(f) in making his decision to transfer. Although all of the factors enumerated in section 54.02(f) must be considered by the trial judge, each one need not be present in a specific case. I___ L___ v. State, supra. We consider that the findings and conclusions of the juvenile court in our case are supported by the evidence.
At the time of the offense L. M. was fifteen years old. Zaragosa was a neighbor and a friend of her grandfather. We review the testimony of Gilbert Salazar, an accomplice of the appellant. On the night in question the appellant told him she had seen Zaragosa with a lot of money earlier in the day, and she asked him if he wanted to rob Zaragosa. When Salazar hesitated, L. M. told him to go get one Wayne Richardson, and Salazar complied. The three of them entered Zaragosa's house after the appellant had received no response when she called Zaragosa's name from outside; Zaragosa was lying on his stomach on the couch when they entered, and he never awakened; they went back outside to decide how to do it; all three returned and went through Zaragosa's pockets and found nothing; they went back outside again, and Richardson found a pipe to hold Zaragosa down with if he moved; all three returned to the interior of the house a third time, and he and the appellant checked Zaragosa's pockets while Richardson held the pipe over Zaragosa's head; they went back outside, the appellant said she had to go home, Richardson said he intended to hit Zaragosa with the pipe, and he and the appellant told Richardson not to do so; Richardson called to an individual named Joe who was walking by and said that Joe would hit Zaragosa with the pipe; he, Richardson, and Joe reentered the house with the pipe while the appellant waited about 20 yards from the house and held Joe's shirt and hat; he found a lighter in Zaragosa's pocket and gave it to Richardson, who in turn gave it to the appellant after she had said it was hers and that she wanted it; the appellant then said she was going to leave Joe's hat and shirt under a tree and go home; after the appellant left, Joe and Richardson went back into Zaragosa's house and hit him with the pipe; later that evening he, the appellant, and the appellant's brother-in-law picked up Richardson and Joe, and the appellant asked them if they "got anything extra".
The appellant's mother testified that at about 1 a. m. on the night of the murder the appellant gave her a cigarette lighter, which the mother thinks Zaragosa took from her home that day.
Officer Vela got the appellant to tell him about what happened that night, and she said "she didn't think the other guys were going to kill [Zaragosa]". Vela based not more than 50% of his opinions about the appellant on Dr. Smith's report and conversations with him; he also relied upon three or four statements in the police file from people who were at the scene of the crime. He does not believe any of the persons he spoke with said that the appellant was in the house when Zaragosa was hit, but they did say that she was outside and was the person who initiated the offense and the hitting.
Juvenile Police Officer Judith Flagg identified the appellant and said that she had handled her for truancy and criminal mischief.
Major crime task force policeman Ernest Taylor testified that he talked to the four individuals involved in the offense (L. M., Dalle [sic] Richardson, Joe Jones, and Gilbert Salazar) during his investigation and, based on the statement of Joe Jones, he arrested the other three.
The trial judge clearly considered all of the matters required by section 54.02(f) of the Family Code, made specific findings of fact related to each, and set out his reasoning and rationale in his order. As already noted, section 54.02 provides that the juvenile court may transfer the juvenile to criminal district court if it determines that the welfare of the community requires it, either because of the seriousness of the offense or the background of the child. The judgment recited that the "alleged offense of murder is very serious and one that this Court does not consider lightly. The facts brought out during the hearing show *814 the alleged murder to be a callous and wanton act on the part of the alleged participants against the person of another ... and the Grand Jury may be expected to return an indictment."
Affirmed.