**In re B.T., a Juvenile.**

**No. 10–0383.**

Supreme Court of Texas.

Oct. 1, 2010.

James Warner Huggler Jr., Attorney at Law, Tyler, TX, for Relator.

Richard Scott Crowther, Criminal District Attorney's Office, Michael West, Smith County Criminal District Attorney, Dillion Matt Bingham, Criminal District Attorney, Tyler, TX, for Real Party in Interest.

PER CURIAM.

In this mandamus proceeding, we consider whether the juvenile court abused its discretion when it did not obtain a complete diagnostic evaluation of a juvenile prior to a hearing to transfer the juvenile to adult criminal court. The Family Code mandates a "complete diagnostic study," and the psychologist who performed this report emphasized it was incomplete. We hold the trial court abused its discretion, a determination the State does not dispute, and we conditionally grant the petition for writ of mandamus.

B.T. is a 17–year–old charged with murdering his teacher. In 2009, the State filed a petition for discretionary transfer urging the juvenile court to order B.T. tried as an adult. Under Family Code Section 54.02(a), the "juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if" certain conditions are met. Section 54.02(a)(3) authorizes transfer to criminal court if, among other requirements, the juvenile court determines "after a full investigation and a hearing" that there is probable cause to believe the child committed the alleged offense and "because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." Section 54.02(d) provides that "[p]rior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense." Section 54.02(f) provides that the juvenile court, in making the transfer decision, shall consider several factors, including "the sophistication and maturity of the child," "the record and previous history of the child," and "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."

In accordance with the Family Code, the juvenile court commissioned Dr. Emily Fallis to perform a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense, and to assess his background, his sophistication and maturity, his record and previous history, the prospects of adequate protection of the public, and the likelihood of his rehabilitation by use of procedures, services, and facilities currently available to the juvenile court. Dr. Fallis's preliminary evaluation concluded B.T. suffered from a mental disease or defect that substantially impaired his capacity to understand the charges against him and the proceedings in juvenile court, and to assist in his own defense. Dr. Fallis stated she would "not proffer an opinion regarding [B.T.'s] capacity to be adjudicated as an adult until he is fit to proceed." The report recommended that B.T. receive inpatient psychiatric treatment "in order to help him attain a minimal level of fitness to proceed" and be reevaluated with regard to the State's transfer motion. Dr. Fallis therefore submitted a report she specifically stated was incomplete.

Based on Dr. Fallis's recommendations, the juvenile court committed B.T. to Vernon State Hospital for 90 days, where he underwent treatment and counseling until he was deemed fit to proceed by Dr. Stacey Shipley. The juvenile court then set B.T.'s transfer hearing for May 13, 2010, even though Dr. Fallis's report remained incomplete.

B.T. and the State *jointly* urged the court to delay the hearing to await completion of the diagnostic study. The court refused, believing it had sufficient information to proceed under Section 54.02(d). At the time, the juvenile court possessed Dr. Fallis's partial report, medical records from Vernon State Hospital by Dr. Shipley, and an evaluation of B.T. by Dr. Paul Andrews from an unrelated juvenile proceeding in 2007. B.T.'s counsel objected that the materials merely addressed B.T.'s fitness to proceed and did not comprise the "complete diagnostic study" required by statute. The court ignored this objection, explaining: "I think I've got before me so much information of an evaluative nature, psychological evaluations and that sort of thing, that I think I've got before me what I would consider a complete diagnostic study." B.T. filed a motion requesting the court reconsider its ruling and await the complete diagnostic study. The court denied this motion on May 10, 2010.

B.T. sought mandamus relief and requested an emergency stay from the court of appeals. The court of appeals stayed the juvenile-court proceedings but ultimately denied mandamus relief. B.T. now seeks relief from this Court.

■■■■ Our mandamus-review standards are well settled. Mandamus relief is proper to correct a clear abuse of discretion when there is "no adequate remedy by appeal." *In Re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004) (citations omitted). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* (citations omitted).

B.T. wants us to direct the juvenile court to (1) vacate its May 3 order that the complete diagnostic report is unnecessary; (2) vacate its May 10 order denying B.T.'s Motion for Reconsideration; (3) enjoin any attempt to conduct a transfer hearing without the finished report. This Court has already stayed the transfer hearing pending our decision on mandamus relief.

B.T. argues the juvenile court abused its discretion when it proceeded without the requisite study. Interestingly, the State does not oppose mandamus relief, sharing B.T.'s concern that a complete assessment has not been completed. The State notes "[t]he trial court appears to have abused its discretion in not allowing completion of a mandatory diagnostic study required before [B.T.] can stand trial as an adult for stabbing his teacher to death." The State is understandably risk-averse: "Given the severity of the charge, the State has an interest in assuring that the law is complied with before a decision is made that Relator should stand trial as an adult."

The primary issue presented is whether the juvenile court erred in concluding the information it already possessed was sufficient, despite Dr. Fallis's caution that further evaluation was required to finish the report. We conclude the juvenile court abused its discretion in proceeding without the complete diagnostic study.

Based on a plain reading of Section 54.02(d), the juvenile court is required to "order and obtain" a "complete diagnostic study" before the hearing. Neither the Legislature, this Court, nor the Court of Criminal Appeals has defined "complete diagnostic study" for purposes of Section 54.02. One court of appeals has described a complete diagnostic study as one that "bears upon the maturity and sophistication of the child and relates to the questions of culpability, responsibility for conduct, and ability to waive rights intelligently and assist in the preparation of a defense." *L.M. v. State*, 618 S.W.2d 808, 811 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.) (citations omitted). It is the "qualitative content of a diagnostic study, rather than a mere quantitative 'checklist' of included items, [that] is the paramount concern." *Id.* at 811–12.

Some courts of appeals have held a trial court did not abuse its discretion where it relied upon materials that did not clearly constitute a complete diagnostic report, but instead contained a variety of psychological evaluations and records. *See I.L. v. State*, 577 S.W.2d 375, 376 (Tex.Civ.App.-Austin 1979, writ ref'd n.r.e.) (study included an intelligence test completed one year prior to hearing, a social evaluation and investigation, monthly progress reports during a one-year stay at the juvenile detention center, a psychiatric examination conducted less than one month prior to the hearing, and testimony from an examining psychiatrist at the hearing that "no further testing was needed and that a complete diagnostic study had been made"); *R.K.A. v. State*, 553 S.W.2d 781, 783 (Tex.Civ.App.-Fort Worth 1977, no writ) (study that was "very comprehensive" included reports from three doctors, the supervisor of intake at the juvenile detention center, and a probation officer, and an evaluation prepared from daily observations by a juvenile department program director and a staff member); *Vasquez v. State*, No. 03–99–00664–CR, 2000 WL 795328, at *1 (Tex.App.-Austin June 22, 2000, no pet.) (study included "a juvenile probation officer's summary, a psychological evaluation, a psychiatric evaluation, a physical examination, and ... an elementary school record"); *L.M.*, 618 S.W.2d at 811–12 (psychological testing for a study was ordered and obtained by the trial judge but not entered into evidence due to the juvenile's objections).

B.T.'s case is distinguishable from these cases. While a trial court has discretion to determine whether a diagnostic study is in fact complete, no appellate court has upheld a case where the commissioned report itself declares it is insufficient. The State candidly concedes the awkwardness: "it is troubling to the State

that the record as it currently stands contains evidence that the only § 54.02(d) diagnostic study ordered by Judge Getz states on its face that it was not completed due to Relator's unfitness to proceed."

The three fitness reports the juvenile court deemed sufficient under Section 54.02(d) contain detailed information regarding B.T.'s background, his treatment, his history of behavioral issues, the various evaluation and testing he has undergone, his diagnoses, and his understanding of the alleged murder and the surrounding circumstances. Each report, however, deals solely with the matter of B.T.'s fitness to proceed. A juvenile is unfit to proceed if "as a result of mental illness or mental retardation[, he] lacks capacity to understand the proceedings in juvenile court or to assist in [his] own defense." TEX. FAM. CODE § 55.31(a). After a motion to determine fitness to proceed is filed, the court may, in making its determination, consider the motion, supporting documents, professional statements of counsel, and witness testimony, and also make its own observation of the child. *Id.* at (b). In contrast, the "complete diagnostic study" for a transfer hearing calls for a far more comprehensive analysis, as described above. The juvenile court here violated Section 54.02(d) by substituting the Vernon State Hospital report and Dr. Andrews's two-year-old report for a reevaluation and complete report by Dr. Fallis.

■ B.T. has no plausible appellate remedy. While a "defendant may appeal an order of a juvenile court certifying the defendant to stand trial as an adult and transferring the defendant to a criminal court under Section 54.02," TEX. CODE CRIM. PROC. art. 44.47(a), any such appeal—a criminal matter governed by the Code of Criminal Procedure and the Texas Rules of Appellate Procedure, *id.* at (c)—must be joined with the defendant's appeal of any

criminal—court conviction or order of deferred adjudication, *id.* at (b). That is, B.T. can appeal his transfer—but only after he has been convicted (or placed on deferred adjudication) in adult court. By this time, 17–year–old B.T. likely will have turned 18, and juvenile adjudication may be unavailable. *See In re N.J.A.,* 997 S.W.2d 554, 557 (Tex.1999). The State notes candidly the potential for wasted judicial resources:

> Absent a finished report from Dr. Fallis ... the State believes that Relator might have a meritorious claim on appeal from any conviction as an adult in this case. A claim ... could result in having [to] start the entire certification process all over again.... Allowing this case to remain infected with potential reversible error when an order from the Court could innoculate the proceedings from that error seems to run contrary to the intent of the Family Code and the interest of justice. The State would certainly have no objection should the Court conclude that the purpose and intent of the law would be better served by having Judge Getz order a more complete diagnostic study.

The Family Code by its terms requires that a complete diagnostic study be requested *and* received. The juvenile court clearly abused its discretion in denying B.T.'s motion to delay the transfer hearing until Dr. Fallis completed her facially incomplete report.

Accordingly, without hearing oral argument, we conditionally grant the writ of mandamus and direct the juvenile court to vacate (1) its May 3 order denying the parties' joint request to delay the transfer hearing until Dr. Fallis finalizes her report, and (2) its May 10 order denying B.T.'s motion for reconsideration. TEX. R.APP. P. 52.8(c). We are confident the

trial court will comply, and the writ will issue only if it does not.