

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00177-CV

_____

IN THE MATTER OF J.D.

---

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-121099-23

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

J.D. (John)[1] appeals the juvenile court's order waiving its jurisdiction and transferring the case to a criminal district court for him to be tried for murder as an adult. He asserts that the statutorily required diagnostic study was incomplete. John argues in two issues that without a complete diagnostic study, (1) the evidence was insufficient to evaluate his sophistication and maturity, and the juvenile court thus abused its discretion by certifying him to stand trial as an adult, and (2) his trial counsel was unable to effectively represent him, and he was thus denied his rights to a fair trial and the effective assistance of counsel. We will affirm.

## I. Background

Shortly after school was dismissed on January 20, 2023, then-16-year-old John[2] drove two friends—D.R. (David) and I.N. (Ike)—to a Whataburger restaurant near Paschal High School. David and Ike were armed with handguns. The trio intended to confront M.D. (Mary) about her social-media posts, which they did not like.

When John, David, and Ike arrived in the Whataburger parking lot, John parked his car in a parking space in front of the restaurant. David got out from the car's back seat and Ike from the front passenger seat. John remained in the car while

---

[1] Throughout this opinion, we use aliases to refer to those who were or may have been minors at the time and to John's parents or other family members. *See* Tex. R. App. P. 9.8(c)(2).

[2] John was six weeks shy of turning 17.

he, David, and Ike had a verbal confrontation with Mary and her cousin Z.C. (Zeke) in the parking lot. The confrontation escalated, and David shot Mary, who fell to the ground. Ike then shot Zeke multiple times and shot Mary while she was on the ground. David and Ike got into John's car, and John drove away. The boys abandoned the car, and John's mother helped him retrieve it the following morning.

Zeke died as a result of his gunshot wounds. Mary survived.

Whataburger surveillance video captured the shooting. Detective Kent Bickley with the Fort Worth Police Department showed still shots of the video to a school official who identified John and Ike.[3] Mary also identified John, as well as the other individuals involved. Detective Bickley and his partner interviewed John. John admitted to what had happened and that he was the getaway driver but claimed that he didn't expect or know in advance what was going to happen.

John, David, and Ike were arrested, and the State filed a petition requesting John's discretionary transfer from juvenile court to criminal district court. The juvenile court ordered the Tarrant County Juvenile Probation Department to prepare "a complete diagnostic study, social evaluation, and full investigation of the child, the child's circumstances, and the circumstances of the alleged offenses(s) [sic], including a social study and a psychological evaluation of [John]." LeAnna Judd, a probation-department supervisor, conducted a pre-diagnostic study and completed a written

---

[3]John, David, Ike, and the two victims were either current or former Paschal students at the time of the shooting.

report with her findings on April 27, 2023. John's psychological evaluation was scheduled for June 11, 2023.

On May 3, 2023, the juvenile court held the transfer hearing.[4] John objected to the hearing's going forward, complaining that the statutorily required diagnostic study was incomplete because the psychological evaluation had not been done.[5] *See* Tex. Family Code Ann. § 54.02(d) ("Prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study . . . ."). The State countered that although a certification report typically includes a psychiatric report, a psychological report, and a report by a probation-department caseworker, Section 54.02(d) of the Texas Family Code does not "necessarily require a psychological or a psychiatric evaluation to render a diagnostic study complete." *See id.* The State contended that the psychological evaluation "fell" under Section 54.02(e), which provides that a juvenile court "may consider written reports from . . . professional consultants" at the transfer hearing but does not expressly require the court to do so. *Id.* § 54.02(e). The juvenile court overruled John's objection and proceeded with the transfer hearing.

During the hearing, the juvenile court heard testimony from Detective Bickley, Judd, and Dr. Daniel Krall, the Clinical Director at the Gainesville State School,

---

[4]By this time, John was 17 years old.

[5]In Tarrant County juvenile court, the "diagnostic study" is referred to as a "pre-diagnostic study."

which is one of the Texas Juvenile Justice Department's facilities. The juvenile court also watched the surveillance video of the shooting.

Detective Bickley testified that he had learned that one of the guns used in the Whataburger shooting had also "been used or [was] believed to have been used in a drive-by or a deadly conduct offense" in the early morning hours of January 19, 2023, the day before the Whataburger shooting.

Detective Bickley also learned from the same school official who had identified John and Ike that the night before the Whataburger shooting, there had been an "altercation possibly involving a firearm" at Andy's Food Store, which is also near Paschal High School. According to the school official, David and Ike had approached some students there, "pulled a weapon," and "made some threats." The students did not want to file a report because they were scared. Detective Bickley's partner retrieved the store's surveillance-video footage from that evening that, according to Detective Bickley, showed John drive his car into the parking lot of Andy's Food Store and park.[6] John stayed in his car, but David and Ike got out. David was displaying a firearm at the time. Detective Bickley admitted that after David went into the store, he could not "fully see the interaction" and that he had only "the word of the students [about] what had taken place."

---

[6]That surveillance video was not offered into evidence.

Detective Bickley also briefly testified about John's prior encounters with Fort Worth police, and through Detective Bickley, the State offered into evidence police reports from those encounters. Judd explained that John had two previous referrals to the juvenile-probation department from those encounters: (1) he received deferred-prosecution probation in June 2021 for an assault causing bodily injury that he had committed in May 2021 and (2) he received probation in May 2022 for a robbery that he had committed in November 2021.[7] John committed the robbery before he had completed his deferred-prosecution probation and was on probation for the robbery when he was referred to the juvenile-probation department for Zeke's murder. Judd further testified about the findings contained in her pre-diagnostic study. She admitted that because the scheduled psychological evaluation had not yet taken place, the study did not contain any treatment recommendations or any IQ, academic, or personality-testing results. Dr. Krall testified generally about the capital-offender program available at the Gainesville State School.

During closing arguments, John again complained that the diagnostic study was incomplete because the psychological evaluation had not been conducted. At the hearing's conclusion, the juvenile court stated that it was waiving jurisdiction and referring John to "adult criminal court." Five days later, the juvenile court signed an order waiving its jurisdiction and transferring the case to the appropriate criminal

---

[7]Both incidents occurred at Paschal High School, and the victims were other students.

court for John to be tried as an adult. In its order, the juvenile court found that John was then 17 years old, that John was 16 years old "at the time the [charged] acts . . . are alleged to have occurred," and that "no adjudication hearing ha[d] been conducted concerning said offenses." The juvenile court made the following additional findings:

> The Court finds the offenses alleged in Paragraphs One and Two of the Petition Requesting [t]he Juvenile Court to Consider Discretionary Transfer to Criminal Court (Waiver of Juvenile Court Jurisdiction) on file in this cause are first degree felony offenses under the penal laws of the State of Texas if committed by an adult. The Court further finds that the offenses are against the person of another.

> The Court finds that there is probable cause to believe that the Respondent committed the offenses alleged in Paragraph One and Paragraph Two of the Petition Requesting [t]he Juvenile Court to Consider Discretionary Transfer to Criminal Court (Waiver of Juvenile Court Jurisdiction) on file in this cause number.

> The Court finds that the Respondent is of sufficient sophistication and maturity to be tried as an adult.

> The Court finds that this Court should waive its exclusive original jurisdiction and transfer this Cause to an appropriate District Court (with criminal jurisdiction) or Criminal District Court of Tarrant County, Texas.

> The Court, after considering all the testimony, social evaluation, full investigation of the Respondent, his circumstances, and the circumstances of the alleged offenses, and other admitted records and reports finds that it is contrary to the best interests of the public to retain jurisdiction.

> The Court finds that because of the seriousness of the offenses alleged and the background of the Respondent, the welfare of the community requires criminal proceedings.

In making the above determinations, the Court has considered, among other matters:

(1)  whether the alleged offenses are against person or property, with the greater weight in favor of transfer given to offenses against the person;

(2)  the sophistication and maturity of the child;

(3)  the record and previous history of the child; and

(4)  the prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by use or procedures, services, and facilities currently available to the Juvenile Court.

John timely filed a notice of appeal. As noted, both of John's appellate issues are based on his claim that the statutorily required diagnostic study was incomplete. The pre-diagnostic study was not initially included in the clerk's record. But between John's filing his brief and the State's filing its brief, the parties jointly moved the juvenile court to supplement the record with a copy of the pre-diagnostic study. In its order granting the motion, the juvenile court found that it had considered the study in its certification determination. The pre-diagnostic study has been filed in this court in a sealed supplemental clerk's record.

## II. Applicable Law and Standards of Review

Under the Texas Family Code, a juvenile court may waive its exclusive original jurisdiction and transfer a juvenile to a criminal district court for criminal proceedings if

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; [and]

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

*Id.* § 54.02(a); *see id.* § 51.02(2) (defining "child" as "a person who is . . . ten years of age or older and under 17 years of age").

The State has the burden to persuade the juvenile court by a preponderance of the evidence that the community's welfare requires the transfer, either because of the seriousness of the offense or the child's background, or both. *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at *19 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.). In making this determination,[8] Section 54.02(f) requires the juvenile court to "consider, among other matters," the following four factors: (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) the child's sophistication and maturity; (3) the child's record and previous history; and (4) the prospects of

---

[8]John does not challenge the juvenile court's determination that there is probable cause to believe that he "committed the offense[s] alleged." Tex. Fam. Code Ann. § 54.02(a)(3).

9

adequate protection of the public and the likelihood of the child's rehabilitation through procedures, services, and facilities currently available to the juvenile court. Tex. Fam. Code Ann. § 54.02(f). Any combination of these factors may suffice to support a waiver of jurisdiction; not every factor needs to weigh in favor of transfer. *See In re Z.M.*, No. 02-21-00213-CV, 2021 WL 4898851, at *1 (Tex. App.—Fort Worth Oct. 21, 2021, no pet.) (mem. op.) (citing *A.K.*, 2021 WL 1803774, at *19). The juvenile court need not consider any other factors, nor does it need to find that the evidence establishes each factor. *Id.* (citing *A.K.*, 2021 WL 1803774, at *19).

When reviewing a juvenile court's waiver-and-transfer order, we first review the court's specific fact-findings regarding the Section 54.02(f) factors under a traditional evidentiary-sufficiency review.[9] *E.g.*, *A.K.*, 2021 WL 1803774, at *18 (citing *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)).

---

[9]We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

We then review the juvenile court's ultimate waiver decision for an abuse of discretion:

> That is, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged or the background of the juvenile or both called for criminal proceedings for the welfare of the community, we simply ask, in light of our own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles.

*Id.* (citing *C.M.M.*, 503 S.W.3d at 701). A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based. *Id.* In contrast, "a waiver decision representing 'a reasonably principled application of the legislative criteria' generally will pass muster under this standard of review." *Id.* (quoting *C.M.M.*, 503 S.W.3d at 701).

### III. Analysis

Section 54.02(d) of the Texas Family Code requires that before the transfer hearing, "[t]he juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense." Tex. Fam. Code Ann. § 54.02(d). Both of John's issues are based on his claim that the statutorily required diagnostic study was incomplete because a psychological evaluation had not been done. He complains that without a complete diagnostic study, (1) the juvenile court lacked sufficient evidence to evaluate the required Section 54.02(f) factors—particularly his sophistication and

11

maturity under Section 54.02(f)(2)—and (2) his trial counsel was unable to effectively represent him at the transfer hearing. We address each of these issues in turn.

A "complete diagnostic study," as required under Section 54.02(d), has not been defined. *See In re B.T.*, 323 S.W.3d 158, 161–62 (Tex. 2010) (orig. proceeding). Section 54.02(d) does not necessarily require a psychological or psychiatric evaluation to render a diagnostic study complete. *See L.M. v. State*, 618 S.W.2d 808, 811 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (involving a diagnostic report in which juvenile's psychological tests were not attached and no psychiatric examination was conducted); *I___ L___ v. State*, 577 S.W.2d 375, 376 (Tex. App.—Austin 1979, writ ref'd n.r.e.) (upholding judgment ordering transfer of juvenile to stand trial as adult even though no psychological examination was made). Instead, a juvenile court has discretion to determine whether a diagnostic study is complete. *See B.T.*, 323 S.W.3d at 161. "[A] complete diagnostic study [is] one that 'bears upon the maturity and sophistication of the child and relates to the questions of culpability, responsibility for conduct, and ability to waive rights intelligently and assist in the preparation of a defense.'" *Id.* (quoting *L.M.*, 618 S.W.2d at 811). "It is the 'qualitative content of a diagnostic study, rather than a mere quantitative "checklist" of included items, [that] is the paramount concern.'" *Id.* (quoting *L.M.*, 618 S.W.2d at 811–12). In other words, a psychological evaluation may be necessary to make the diagnostic study complete in some cases but not others.

Here, the pre-diagnostic study detailed the facts giving rise to John's referral for the Whataburger shooting and listed his two previous offenses. The study also included John's family history and living arrangements, a cursory medical history, his drug-test history, his educational and employment history, his previous psychiatric and psychological evaluation, and descriptions of the juvenile-services programs he had been enrolled in. According to the study, John had been attending GED classes. Regarding John's earlier psychiatric and psychological evaluation, the study states that John "saw a psychiatrist at MHMR and was diagnosed with [specific mental-health conditions]. He was prescribed meds and took them initially but never gave them a chance to have full effect and stated he didn't like the way he felt on [them]."[10]

In addition to the pre-diagnostic study, the juvenile court also heard testimony from Judd—who had prepared the study—and Detective Bickley. The juvenile court also considered the police reports from John's two previous offenses. In May 2021, John and a fellow student had followed a classmate into a bathroom at Paschal High School and assaulted the classmate. While John was on deferred-prosecution probation for that assault,[11] he and a different fellow student lured another classmate into a Paschal High School bathroom in November 2021 and assaulted and robbed

---

[10]It is unclear when this psychiatric evaluation was conducted.

[11]Judd testified that after the assault, MHMR had evaluated John for possible "health treatment" but had "determined at that point that family therapy was more important."

the classmate. John was on probation for that robbery when he drove the getaway car in the January 2023 Whataburger shooting.

We conclude that even without the psychological study that it had ordered,[12] the juvenile court acted within its discretion by implicitly determining that the pre-diagnostic study in this case was complete and considering the study as part of its waiver-and-transfer decision. Based on the pre-diagnostic study and the evidence and testimony presented at the transfer hearing, we conclude that the juvenile court had sufficient evidence to evaluate the Section 54.02(f) factors.

Regarding those factors, the evidence sufficed to show that the alleged offense—Zeke's murder—was against a person, which weighs greater in favor of transfer than an offense against property. *See* Tex. Fam. Code Ann. § 54.02(f)(1). The evidence further showed that John's history included assault and robbery, and that deferred-prosecution, probation, and the juvenile-services programs he had been enrolled in had not deterred John's escalating criminal behavior or his continuing to associate with those engaged in criminal behavior. *See id.* § 54.02(f)(3) ("the record and previous history of the child"), (4) ("the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures,

---

[12]The juvenile court had the discretion to conduct the hearing without the court-ordered psychological study. *Cf. Maye v. State*, 966 S.W.2d 140, 142 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (stating that a court has full control of its orders or judgments during the term in which they are made, and may, upon sufficient cause shown, in exercise of its sound discretion, amend, correct, revise, supplement, open, or vacate such judgments).

services, and facilities currently available to the juvenile court"). Nor had John's participation in the juvenile-services programs deterred him from continuing to use marijuana—he tested positive five times between June 2021 and April 2023.

Lastly, the evidence regarding John's sophistication and maturity was subject to the juvenile court's interpretation. John was almost 17 years old at the time of the shooting. According to John's terminally ill mother,[13] John—the second of her four children—was the child who helped her out the most at home and mostly did so without complaint.[14] Additionally, John and his girlfriend have an infant and are expecting another child.

John's behavior leading up to and during the Whataburger shooting also indicated his sophistication and maturity. Since assaulting a fellow student in a school bathroom in May 2021, John had escalated his criminal behavior in terms of severity, sophistication, and planning. The night before the shooting, John drove David and Ike to Andy's Food Store, where David got out of the car wielding a gun and then allegedly threatened some Paschal students. The following day, John once again drove David and Ike to confront a Paschal student. During that confrontation, John calmly looked on and didn't look surprised or alarmed when David and Ike shot Zeke and

---

[13]John's mother did not testify but was interviewed as part of the pre-diagnostic study.

[14]John's mother and father never married, and John's father left the family to live in Del Rio, Texas, with his new wife. John's father has little contact with the children.

Mary. Instead, he allowed David and Ike to get into his car, then drove off, and later ditched his car; John didn't go to the police. From these actions, the juvenile court could have concluded that John could appreciate the nature and effect of his actions and understood right from wrong. And no evidence suggested that John might be incompetent to stand trial. Accordingly, we conclude that the evidence was legally and factually sufficient to support the juvenile court's finding that John is of "sufficient sophistication and maturity to be tried as an adult." *See id.* § 54.02(f)(2).

Because any combination of Section 54.02(f) factors may suffice to support a waiver of jurisdiction and transfer, *see A.K.*, 2021 WL 1803774, at *19, we conclude that the evidence was sufficient to support the juvenile court's findings that because of the seriousness of the offense and because of John's background, the community's welfare required John's transfer to criminal court, *see* Tex. Fam. Code Ann. § 54.02(a)(3). The juvenile court thus did not abuse its discretion by certifying John to stand trial as an adult. We overrule John's first issue.

John complains in his second issue that the juvenile court violated his Sixth Amendment rights to a fair trial and the effective assistance of counsel by proceeding without a complete diagnostic study. A juvenile is entitled to effective assistance of counsel, and we review the effectiveness of counsel's representation under the two-pronged *Strickland* standard. *In re R.D.B.*, 102 S.W.3d 798, 800 (Tex. App.—Fort Worth 2003, no pet.) (per curiam). To establish ineffective assistance under that standard, an appellant must prove by a preponderance of the evidence that (1) his

counsel's representation was deficient and (2) the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. *Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308.

Here, John's trial counsel raised his complaints challenging the completeness of the pre-diagnostic study twice during the transfer hearing. John admits on appeal that his trial counsel was "clearly effective" but was "hampered by his inability to test a full pre-diagnostic study on his client's behalf because the [j]uvenile [c]ourt held a hearing without one in the file." Based on John's admission and our review of the record, we

conclude that John failed to prove by a preponderance of the evidence that his trial counsel's representation was deficient. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. We thus overrule John's second issue.

## IV. Conclusion

Having overruled John's two issues, we affirm the juvenile court's order waiving its jurisdiction and transferring the case to criminal district court.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  September 21, 2023