NUMBER 13-17-00319-CV



# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE MATTER OF D.M., A CHILD

**On appeal from the 449th District Court
of Hidalgo County, Texas.**

## MEMORANDUM OPINION
**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Justice Benavides**

By three issues, appellant D.M.[1], a juvenile, challenges the juvenile trial court's

certification of his case being transferred to the adult criminal justice system.   D.M.

asserts that:   (1) the trial court erred by considering documents that were not in

evidence, (2) the evidence was insufficient to support the determination to certify D.M. as

---

[1]   Pursuant to Rule 9.8(b) of the Texas Rules of Appellate Procedure, we will utilize aliases when referring to parties and persons related to this proceeding.   *See* TEX. R. APP. P. 9.8(b); TEX. FAM. CODE ANN. § 56.01(j) (West, Westlaw through 2017 1st C.S.).

an adult, and (3) the trial court committed error by excluding relevant evidence during his competency trial.   We affirm.

## I.   BACKGROUND

### A.   Procedural History

D.M. was charged with the capital murder of M.A. and the aggravated assault of F.R.   On March 29, 2016, the State filed its Petition for Discretionary Transfer to Criminal Court, asking the trial court to waive its jurisdiction and transfer D.M.'s case to the adult criminal courts.   *See* TEX. FAM. CODE ANN. § 54.02 (West, Westlaw through 2017 1st C.S.).   D.M. subsequently filed a motion to determine whether he was unfit to proceed, as a result of mental illness or mental retardation.   The trial court ordered a social study to be conducted by the juvenile probation department and appointed Dr. David Moron and Dr. Gregorio Pina to conduct evaluations of D.M. under chapter 55 of the Texas Family Code.   *See* TEX. FAM. CODE ANN. ch. 55 (West, Westlaw through 2017 1st C.S.) (proceedings concerning children with mental illness or intellectual disabilities).

A two-day jury trial was held to determine if D.M. was competent to proceed with the charges filed against him, with the jury finding D.M. fit to proceed.   Approximately three months later, the trial court conducted a hearing regarding the State's motion to transfer D.M. to an adult criminal court.

### B.   Discretionary Transfer Hearing

During the transfer hearing, the State called Hidalgo County Sheriff's Office Investigator Javier Vargas as its first witness.   Investigator Vargas testified that he was the lead investigator on the capital murder case.   On February 15, 2016, Hidalgo County Sheriff's deputies were called out to a homicide in Mission.   Upon arriving, the deputies

2

discovered the body of M.A. and interviewed F.R., the complainant in the underlying aggravated assault charge.

F.R. told deputies that he sold small amounts of hydroponic marijuana out of his house, and M.A. had arrived with D.M. and others to purchase drugs from him. After the drug transaction occurred, D.M. and M.A. returned to the waiting vehicle they arrived in, but F.R. stated that suddenly M.A. jumped out from behind the driver's side seat of the vehicle, came running towards F.R., and told F.R. in Spanish that "they had a gun." F.R. then said the front passenger, whom he believed to be D.M., started shooting, hitting M.A.[2]

Further investigation by the sheriff's office found a video sent to M.A. on Facebook Messenger which depicts D.M. holding a gun and wearing an identical shirt to the one described to deputies by F.R. Investigator Vargas testified that the gun and bullets[3] seen in the video appeared to match the bullets found at the crime scene. Based on the information gathered, the sheriff's office deputies arrested D.M. for the death of M.A. and aggravated assault of F.R.

D.M. gave deputies a statement placing himself at the crime scene and implicated a co-defendant, J.M. Investigator Vargas testified that based on this information, police executed a search warrant at J.M.'s girlfriend's home, where deputies located ammunition that matched the ammunition seen in D.M.'s video and found at the crime scene, as well as other U.S. Border Patrol-issued items. After arresting J.M. and charging him with the

---

[2] Additional eyewitnesses interviewed also identified the front passenger as the shooter.

[3] Investigator Vargas testified that the bullets had a distinctive "purple" hue to them, which he identified as being used by the U.S. Border Patrol in their training exercises.

murder of M.A. and the aggravated assault of F.R., J.M. gave a statement corroborating many of the details given by F.R. and identifying D.M. as the shooter.

Probation officer Marissa Arispe-Marmolejo (Arispe) testified that she supervised D.M. Arispe stated she was first assigned to D.M. when he was placed on supervision following a prior state jail felony charge of unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. § 31.07 (West, Westlaw through 2017 1st C.S.). Arispe also said she was the probation officer who prepared the social study and discretionary transfer hearing report[4] for the trial court. Arispe told the trial court that she had not had contact with D.M. or his family for supervision purposes or for the completion of the social study because D.M.'s counsel had requested that the probation department not have contact with D.M.

Arispe explained that she gathered information for her social study based on interviews with D.M.'s teachers at the juvenile detention center, her observations of D.M. from the courtroom or accompanying him to doctor's appointments, and included the doctor's recommendations. Arispe stated that her report included recommendations from Drs. Xavier Martinez, Gerardo Mireles, David Moron, Gregorio Pina, and Ramiro Ramirez. She agreed with D.M. that she did not review any records from outside of the detention facility.

Arispe explained that D.M. was doing well in his classes at the detention facility, to the point where at least one of his teachers did not believe he belonged in special education classes. Arispe noted that it appeared that D.M. liked to selectively forget

---

[4] The discretionary transfer hearing report was referred to as the social study addendum during the hearing.

4

things when convenient and also appeared to understand the courtroom proceedings.

Arispe testified that the juvenile probation department recommended for D.M. to be transferred to the adult criminal system based on the type of offense committed.

The trial court waived its jurisdiction and explained the factors that contributed to its decision. The trial court signed D.M's certification on May 23, 2017. This interlocutory appeal followed.[5] *See* TEX. FAM. CODE ANN. § 56.01(c)(1)(A) (West, Westlaw through 2017 1st C.S.).

## II.   STANDARD OF REVIEW AND APPLICABLE LAW FOR DISCRETIONARY TRANSFER

In order to waive jurisdiction and transfer D.M. to be tried as an adult, the juvenile court had to find that:   (1) D.M. was alleged to have committed a felony; (2) D.M. was fourteen years old or older at the time he committed the alleged offense (a capital felony for which no adjudication hearing has been conducted); (3) after a full investigation and a hearing, there was probable cause to believe that D.M. committed the alleged offense; and (4) that the welfare of the community required criminal proceedings because of the alleged offense's seriousness or D.M.'s background.   *See* TEX. FAM. CODE ANN. §

---

[5] Although juvenile certification cases are on an accelerated 180-day deadline for the courts of appeals, this case was delayed by actions of the parties involved.   *See* TEX. FAM. CODE ANN. § 56.01(c), (h-1) (West, Westlaw through 2017 1st C.S.); *see also Order Accelerating Juvenile Certification Appeals and Requiring Juvenile Courts to Give Notice of the Right to An Immediate Appeal*, TEXAS SUPREME COURT, Misc. Docket No. 15-9156 (Tex. 2015), http://www.txcourts.gov/media/1055398/159156.pdf (mandating that courts of appeals ensure, as reasonably possible, that juvenile certification appeals are brought to final disposition within 180 days of the date the notice of appeal is filed).

The notice of appeal was filed in the trial court on June 14, 2017.   The reporter's record was not filed until September 25, 2017.   D.M.'s original appellate counsel filed a motion for extension of time due to his trial commitments, requesting a deadline of January 30, 2018.   This Court abated the appeal on October 31, 2017, and requested new appellate counsel be appointed for this appeal only.   The trial court appointed D.M.'s appellate counsel on this appeal on November 2, 2017.   Appellate counsel filed his brief on November 27, 2017.   The sealed social study and addendum were filed with this Court on December 7, 2017.   The State filed its brief on December 28, 2017.

54.02(a)(1)–(3); *Matter of G.B.*, 524 S.W.3d 906, 914 (Tex. App.—Fort Worth 2017, no pet.).

In making the determination required in subsection (a), the juvenile court had to consider, among other matters: (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against persons; (2) the sophistication and maturity of D.M.; (3) the record and previous history of D.M.; and (4) the prospect of adequate protection of the public and the likelihood of the rehabilitation of D.M. by use of the procedures, services, and facilities currently available to the juvenile court. *See* TEX. FAM. CODE ANN. § 54.02(f). These aforementioned factors are nonexclusive and serve to facilitate the juvenile court's balancing of the potential danger to the public posed by that particular juvenile offense with the juvenile's amenability to treatment. *Moon v. State*, 451 S.W.3d 28, 38 (Tex. Crim. App. 2014) (citing *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)).

Family Code section 54.02(h) requires that if the

juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the person to the appropriate court for criminal proceedings and cause the results of the diagnostic study of the person ordered under Subsection (d), including psychological information, to be transferred to the appropriate criminal prosecutor. On transfer of the person for criminal proceedings, the person shall be dealt with as an adult and in accordance with the Code of Criminal Procedure. . . .

TEX. FAM. CODE ANN. § 54.02(h).

Regarding our review of the trial court's order, the court of criminal appeals has instructed the following:

[I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of

6

fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review."[6]   But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard.   That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles.   In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria?   And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

*Matter of G.B.*, 524 S.W.3d at 914–15 (quoting *Moon*, 451 S.W.3d at 47).   Additionally,

a reviewing court should measure sufficiency of the evidence to support the juvenile court's stated reasons for transfer by considering the sufficiency of the evidence to support the facts as they are expressly found by the juvenile court in its certified order.   The appellate court should *not* be made to rummage through the record for facts that the juvenile court *might* have found, given the evidence developed at the transfer hearing, but did not include in its written order.   We therefore hold that, in conducting a review of the sufficiency of the evidence to establish the facts relevant to the Section 54.02(f) factors and any other relevant historical facts, which are meant to inform the juvenile court's discretion whether the seriousness of

---

[6]   Juvenile cases are reviewed under the civil standards of review for legal and factual sufficiency. *Matter of G.B.*, 524 S.W.3d 906, 914 n.13 (Tex. App.—Fort Worth 2017, no pet.).   Because the State's burden is the preponderance of the evidence, *see Moon v. State*, 451 S.W.3d 28, 35, 40, 46 (Tex. Crim. App. 2014), we may sustain a legal sufficiency challenge only when:   (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.   *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014).   In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.   *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).   Anything more than a scintilla of evidence is legally sufficient to support the finding.   *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

When reviewing a challenge that evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.   *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

the offense alleged or the background of the juvenile warrants transfer for the welfare of the community, the appellate court must limit its sufficiency review to the facts that the juvenile court expressly relied upon, as required to be explicitly set out in the juvenile transfer order under Section 54.02(f).

*Id.* at 915 (quoting *Moon*, 451 S.W.3d at 49–50) (emphasis in original).

### III.    SUFFICIENCY OF THE EVIDENCE

By his second issue, which we address first, D.M. argues the evidence was insufficient to support the trial court's determination to certify.

### A.    Applicable Law and Discussion

"Any person accused of committing a felony offense between his tenth and seventeenth birthdays is subject to the exclusive original jurisdiction of a juvenile court." *Ex parte Arango*, 518 S.W.3d 916, 920 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "This means that the juvenile court has the power to hear and decide matters pertaining to the juvenile offender's case before any other court, including the criminal district court, can review them." *Id.* But "the right of a juvenile offender to remain outside the jurisdiction of the criminal district court is not absolute." *Id.*

The first step of our evaluation of the trial court's decision to certify D.M. as an adult is to review its findings of facts under a traditional sufficiency review. *See Matter of G.B.*, 524 S.W.3d at 914–15. The trial court stated the following facts in reaching its decision:

1.    There is probable cause to believe [that D.M.] committed the offenses as alleged in the Petition, namely the offenses of CAPITAL MURDER and AGGRAVATED ROBBERY, which are capital and first degree felonies, pursuant to Texas Penal Code § 19.03 and §29.03, respectively. [D.M.] is seventeen (17) years old, having been born on March 31, 2000, and was 14 years of age or older and under 17 years of age on or about February 15, 2016, the date he is alleged to have committed the offenses set out in the State's Petition

8

for Discretionary Transfer to Criminal Court.

2.   [D.M.] was properly served with the petition and the summons in compliance with the notice requirements of §§ 53.04, 53.05, 53.06, and 53.07 of the Texas Family Code including that the summons stated the purpose of the hearing was to consider discretionary transfer to Criminal District Court.   Moreover, [D.M.] received the petition and summons at least two days before this Court conducted the hearing.

3.   The Court ordered a complete diagnostic study, social study, and full investigation of [D.M.], his circumstances, and the circumstances of the alleged offense.   The Court did receive a full investigation of [D.M.], his prior referrals, diagnostic study, and his circumstances. The social study submitted for the Court's consideration in this matter was prepared without assistance from [D.M.] or his family inasmuch as Counsel for [D.M.] instructed [D.M.] not to speak with the assigned Juvenile Probation Officer.

4.   At least five days before this hearing the attorney for [D.M.] and the attorney for the State received a copy of all reports this Court considered in reaching this decision, namely: the complete social and diagnostic study ordered by the 449th District Court; psychological and/or psychiatric evaluations prepared by Dr. Ramiro Ramirez, Dr. Xavier Martinez, Dr. Gerardo Mireles, Dr. David Moron, and Dr. Gregorio Pina, as well as the offense reports from the arresting agency, which included witness statements and a statement of accused.   The Court also considered still images from a video of [D.M.] displaying the firearm and bullets used during the alleged offenses which he sent to the victim's Facebook account.

(emphasis in original).

The trial court then evaluated the different factors in section 54.02(f) of the family code in support of its decision to certify D.M. as an adult.   *See* TEX. FAM. CODE ANN. § 54.02(f).

### a.   Alleged Offense

The trial court first considered the offense itself based mainly on the testimony of Investigator Vargas and his investigation.   The trial court issued the following findings:

1.    **This Court reviewed and considered whether the alleged offenses were against person or property and finds in support of the discretionary transfer specifically as follows:**

There is probable cause to believe [D.M.] committed multiple offenses against the person of another, and that because they are against the person it gives greater weight in favor of discretionary transfer under this factor.

More specifically, the Court finds the following aspects of the alleged offenses, and [D.M.]'s alleged participation in it, particularly egregious and aggravating:

[D.M.] used and exhibited a deadly weapon, namely a firearm, during the commission of each of these offenses.

On February 15, 2016, [D.M.] threatened the victim, [F.R.], by pointing a firearm at him while attempting to steal his marihuana. This action put the victim in fear of death or serious bodily injury. While co-defendant, [J.M.], drove away, [D.M.] proceeded to fire multiple rounds with the firearm in the direction of the victim and the deceased.

Further, on February 15, 2016, while [D.M.] was discharging the firearm as he fled the Aggravated Robbery, he fatally wounded the deceased, [M.A.].  [D.M.] was later identified by the victim, [F.R.], as the gunman in the aggravated robbery and capital murder.

(emphasis in original).

The record provides evidentiary support for the trial court's findings.   The State presented evidence about the investigation of the capital murder and aggravated robbery. The evidence showed that D.M. went to F.R.'s house to buy marijuana, and then shot M.A. afterward.   Statements by F.R. identify D.M. as the front passenger and shooter. Additional eyewitness statements corroborate the front passenger was the shooter.   The trial court also considered still images from a video that D.M. sent M.A. on Facebook.   In the video, D.M. is seen holding and pointing a gun similar to the one thought to be used in the murder.   The bullets seen on the still images have a "purplish hue" to them, similar

10

to the bullets found at the crime scene and in the co-defendant's home. D.M.'s own statement places him at the crime scene, although he does attempt to implicate J.M.

Based on the record, we conclude there is both legally and factually sufficient evidence to support the trial court's findings that probable cause existed that D.M. committed multiple offenses and that his alleged actions were egregious and aggravating.

### b.     Sophistication and Maturity

The trial court next considered the sophistication and maturity of D.M. and made the following findings:

> **2.     This Court reviewed and considered the sophistication and maturity of [D.M] and finds in support of discretionary transfer specifically as follows:**
>
> According to testimony and social study prepared by Probation Officer Marissa Arispe-Marmolejo, [D.M.]'s behavior while in detention is in line with his chronological age. Further, based on her observations he seems to be aware of the nature and scope of the court proceedings. She indicated that he is able to ask appropriate question[s] and verbalize his feelings regarding his current situation.
>
> Additionally, the teachers in detention find [D.M.] to be sufficiently sophisticated and mature in comparison to other students. They expressed that he does well in class when he applies himself, and that despite his diagnosis and special education needs he is an intelligent child. They also indicated that [D.M.] exhibits manipulative behavior, not only with them, but with detention staff.
>
> Further, [D.M.] has had in excess of one hundred (100) Incident Reports while in detention, some of which include manipulation of staff, threats of violence/intimidation, and possession of contraband. [D.M.] has used manipulation and threats against staff in order to obtain contraband, such as gum, books/magazines, and statues of the *Santisima Muerte*.
>
> According to Dr. Pina's report, [D.M.] admits to belief in *Santisima Muerte* which based on Dr. Pina's clinical experience with legal offenders, is reported to be a cult which will protect the devotee in

difficult or desperate situations. Dr. Pina further reported that this cult appears to psychologically protect those who live in the margins of the law or outside it and rewards its devotees with financial gain and finding acceptance/love.

[D.M.]'s level of sophistication and maturity, according to Dr. Pina, is of someone who is "street smart" and therapized. He indicated that [D.M.] exaggerated his symptoms during the evaluation and uses his Intellectual Disability to his advantage.

Further, Dr. Mireles indicates in his report that the results on several assessments were in the extreme low range and that he was unsure whether those results were accurate or if they were due to malingering, failure to follow instructions, invalid responding, or purposeful attempts to portray himself in an unduly negative manner.

Although [D.M.] is diagnosed as having Intellectual Disability, most of the doctors who evaluated him report that he was able to understand the court proceedings. Specifically, Dr. Moron indicates that this disability is not currently interfering with his understanding of the charges against him or his ability to assist in his defense.

Dr. Mireles' report indicates that [D.M.]'s mother, [R.M.], mentioned that he fantasizes about being in a gang. His report also indicates that [D.M.] admitted he is a gang member and that most of his friends are gang members. Further, [D.M.] has admitted to worship of the Santisima Muerte. Based on the testimony of Investigator Javier Vargas, [D.M.] also made a video of himself displaying the firearm and bullets used during the alleged offenses which he sent to the victim. This testimony is corroborated by the still photographs of [D.M.] which were admitted into evidence.

All these factors when considered together point to [D.M.]'s glorification of the gang/street lifestyle and supports Dr. Pina's assertion that he is street smart and possesses a maturity sufficient to understand the behaviors he is engaging in. Further, [D.M.] demonstrated that he clearly understands and is very aware that there are different consequences in the juvenile compared to the adult justice system.

(emphasis in original).

During the hearing, Arispe testified that she only included the findings made by each doctor who evaluated D.M. However, the reports were made part of the record

12

before this Court, as the trial court noted that it reviewed the reports in making its determination. Although all the doctors who evaluated D.M. agreed he suffered from an intellectual disability, multiple doctors felt that D.M. and his mother exaggerated his symptoms during their evaluations. Additionally, the trial court considered D.M.'s school records and the information received from his teachers in detention. Based on the record in this case, we conclude that there is legally and factually sufficient evidence to support the trial court's finding that D.M. was sufficiently sophisticated and mature to stand trial as an adult.

### c. Record and Previous History

The trial court then considered D.M.'s prior criminal history and behavior while in the juvenile detention facility and made the following findings:

**3. This Court reviewed [D.M.]'s record and previous history and finds in support of discretionary transfer specifically as follows:**

[D.M.] had two prior referrals to the Hidalgo County Juvenile Probation Department. On November 5, 2015, [D.M.] was placed on Court Ordered Deferred Prosecution for the felony offense of Unauthorized Use of a Motor Vehicle that was referred on September 12, 2015. [D.M.] was not compliant on his supervision. On January 16, 2016, he was charged with misdemeanor Possession of Marijuana.

[D.M.] has had in excess of one hundred (100) disciplinary write-ups while detained at the Hidalgo County Juvenile Detention Center, including violations for assaulting staff/another resident, exhibiting behavior that poses a threat to the safety/security of the facility, destroying/defacing county property, disrespecting staff, and possession of contraband. Additionally, [D.M.] self-reported that he is, or at one time was, in a gang.

(emphasis in original).

D.M.'s prior criminal referrals show he was given an opportunity to rehabilitate with

13

the services available to him; however, he chose to escalate his criminal behaviors and demonstrated an indifference to the consequences. His referrals while in detention showed a continuing disregard for the system. We conclude there is legally and factually sufficient evidence to support the trial court's finding that D.M.'s record and history support certification.

### d. Protection of the Public and Likelihood of Rehabilitation

Last, the trial court considered what types of rehabilitation would be available if D.M. stayed within the juvenile system, and if those options were likely to offer protection to the public. The following findings were made:

4. **This Court reviewed and considered the prospects of adequate protection of the public and the likelihood, if any, of the rehabilitation of [D.M.] by use of the procedures, services, and facilities currently available to the Juvenile Court and based on the above and its knowledge of the rehabilitative services that may be provided under TITLE III OF THE TEXAS FAMILY CODE and the age restrictions imposed by the TEXAS HUMAN RESOURCES CODE, finds in support of discretionary transfer specifically as follows:**

   The crimes [D.M.] is alleged to have committed are so egregious and aggravated that this Court determines that based on these offenses and his prior referral history, that he will not be amenable to this Court's additional efforts to rehabilitate him.

   Further, the efforts of the Hidalgo County Juvenile Probation Department to rehabilitate [D.M.] for past criminal behavior have been unsuccessful, and instead, [D.M.]'s criminal behavior escalated to the more serious offenses of Capital Murder and Aggravated Robbery.

   Further, the age of [D.M.] at this time excludes him from being eligible for most programs and placements available to the Juvenile Probation department for rehabilitation.

   Further, the decision to seek a determinate petition is in the discretion of the prosecutor and the prosecutor chose not to seek grand jury approval in these cases. See TEX. FAM. CODE ANN. §

14

54.045(a) (West 2014).

(emphasis in original).

The escalation of D.M.'s criminal offenses, as well as his age at the time of the hearing, disqualified him from most programs available through the juvenile justice system, according to Arispe. Additionally, the trial court found that being placed on probation did not rehabilitate D.M. from reoffending. Because there is more than a scintilla of evidence that the public would not be adequately protected from D.M.'s future conduct and that D.M. was unlikely to be rehabilitated by the juvenile justice system, we conclude the evidence is legally sufficient to support the trial court's findings. Also, based on all of the evidence presented, especially Arispe's testimony that no facility would accept D.M., we conclude that the evidence is also factually sufficient to support a finding that transferring D.M. to be tried as an adult would protect the public from future conduct and lack of rehabilitation options available in the juvenile justice system.

### B. Summary

We hold the written order by the trial court contains sufficient findings specific to D.M.'s case to support its certification order. In light of the trial court's findings and our own review of the record, we conclude the juvenile court did not abuse its discretion by waiving jurisdiction and transferring D.M. for trial as an adult. We overrule D.M.'s second issue.

### IV. DOCUMENTS PROPERLY CONSIDERED

By his first issue, D.M. argues the trial court considered documents that were not properly in evidence.

15

## A.    Applicable Law and Discussion

D.M. alleges the trial court improperly considered the social study and addendum created by Arispe in making its determination.    Prior to the beginning of the hearing, the State asked the trial court to take judicial notice of all of the documents in the trial court's file, specifically, Drs. Martinez and Pina's reports, as well as the social study and addendum prepared by Arispe.    D.M. had no objections and asked to include the doctors' reports that had been offered during the prior competency hearing.    The State then clarified that it was specifically pointing out the documents prepared by order of the trial court that were statutorily required.    Again, D.M. failed to object.    The trial court then took judicial notice of the court's file.

Section 54.02(c) states "the juvenile court shall conduct a hearing without a jury to consider transfer of the child for criminal proceedings."    *See* TEX. FAM. CODE ANN. § 54.02(c).    Section 54.02(d) states "prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense."    *Id.* § 54.02(d). Section 54.02(e) states that "at the transfer hearing the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses."    *Id.* § 54.02(e).

"Section 54.02(e) allows the court to consider a probation officer's written report." *Matter of K.B.H.*, 913 S.W.2d 684, 686 (Tex. App.—Texarkana 1995, no pet.).    Any complaint that the State improperly introduced the social evaluation through Arispe is "misplaced because the court could consider her report even if the State had not formally offered it into evidence."    *Id.* at 687–88; *see L.M. v. State*, 618 S.W.2d 808, 818 (Tex.

16

Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).   Here, the trial court was permitted to consider the statutorily required social study and addendum Arispe completed even though it had not formally been entered into evidence as an exhibit during the hearing. Additionally, by D.M. not objecting to the trial court taking judicial notice of the court's file, with a specific request from the State to include the social study and addendum, any issue that could be raised was waived.   *See* TEX. R. APP. P. 33.1.   We overrule D.M's first issue.

## V.     TRIAL COURT DID NOT EXCLUDE RELEVANT EVIDENCE

By his third issue, D.M. complains that the trial court excluded relevant evidence by not notifying the jurors in the competency hearing that D.M. was not present for part of the competency hearing.

### A.     Applicable Law and Discussion

D.M. refers to an event that occurred during his Chapter 55 competency evaluation.   *See* TEX. FAM. CODE ANN. § 55.32 (West, Westlaw through 2017 1st C.S.). However, an appeal may only be taken on "behalf of a child from an order entered under. . .(E) Chapter 55 by a juvenile court committing a child to a facility for the mentally ill or intellectually disabled."   *Id.* at § 56.01(c)(1)(E) (West, Westlaw through 2017 1st C.S.). Additionally, in his notice of appeal filed with the trial court, D.M. challenges the order of the juvenile court waiving jurisdiction and transferring him to a criminal court, not the order stating he is fit to stand trial.   Therefore, this issue is not properly before us and therefore, waived.   *See* TEX. R. APP. P. 33.1.   We overrule D.M.'s third issue.

17

## VI.    CONCLUSION

We affirm the juvenile court's order transferring jurisdiction.

GINA M. BENAVIDES,
Justice

Delivered and filed the
18th day of January, 2018.