**Opinion filed February 15, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00229-CV

_____

## IN THE MATTER OF P.Z.E., A JUVENILE

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. J07444**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the county court at law, sitting as a juvenile court, waived its jurisdiction over P.Z.E., Appellant, and transferred the cause to a criminal district court. *See* TEX. FAMILY CODE ANN. § 54.02 (West 2022), § 56.01(c)(1)(A), (h), (h-1) (West Supp. 2023). In two issues on appeal, Appellant asserts that the juvenile court abused its discretion when it waived its jurisdiction over Appellant and entered the transfer order because, he contends, the evidence is legally and factually insufficient to support the trial court's

finding of probable cause and its findings under Section 54.02(f) of the Texas Family Code. We affirm.

*Standard of Review and Applicable Law*

Courts designated as juvenile courts have original and exclusive jurisdiction over juvenile proceedings. *See* FAM. §§ 51.04, 54.02. "But the right of a juvenile offender to remain outside the jurisdiction of the criminal district court is not absolute." *Bell v. State*, 649 S.W.3d 867, 885 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). "A juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if certain statutory and constitutional requirements are met." *Ex parte Thomas*, 623 S.W.3d 370, 372 (Tex. Crim. App. 2021). A juvenile court's transfer of a juvenile offender from its court to criminal court for prosecution as an adult "should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be 'protected and rehabilitated rather than subjected to the harshness of the criminal system.'" *Id.* at 376 (quoting *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)).

If a child was fifteen years of age or older at the time he is alleged to have committed a felony offense, a juvenile court may transfer the case to a criminal district court for trial, even if the offender remains a child at the time of transfer. *Id.* at 377 (citing FAM. § 54.02(a)). Pursuant to Section 54.02(a), the juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

. . . .

(B) 15 years of age or older at the time the child is alleged to have committed the offense . . . and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

FAM. § 54.02(a).

"The State has the burden to persuade the juvenile court by a preponderance of the evidence that the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense alleged or the background of the child, or both." *Bell*, 649 S.W.3d at 886. In deciding whether the preponderance of the evidence supports this third requirement of Section 54.02(a) of the Texas Family Code, the juvenile court shall consider the following non-exhaustive list of factors:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

FAM. § 54.02(f). These factors are to facilitate the juvenile court's balancing of potential danger to the public posed by the juvenile offender with the juvenile's amenability to treatment. *Bell*, 649 S.W.3d at 886. Any combination of the factors may suffice to support a waiver of jurisdiction and transfer. *In re X.S.*, 659 S.W.3d 477, 484 (Tex. App.—Texarkana 2022, no pet.).

We review a juvenile court's decision to waive its exclusive original jurisdiction and transfer the case using a two-part test. First, we review the juvenile court's specific findings of fact using the traditional evidentiary sufficiency review standard. *Bell*, 649 S.W.3d at 887; *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at *18 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (citing *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). "In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable fact finder could not reject it." *Bell*, 649 S.W.3d at 887. "If there is more than a scintilla of evidence to support the findings, then the evidence is legally sufficient." *Id.* "Under a factual sufficiency challenge, we consider all the evidence presented to determine if the juvenile court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong and unjust." *In re X.S.*, 659 S.W.3d at 484; *see In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *8 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.) ("[W]e may review the entire record to determine whether the facts elicited sufficiently support the juvenile court's stated reason or reasons for the transfer.").

Second, we review the juvenile court's waiver decision for an abuse of discretion. *Bell*, 649 S.W.3d at 887 (citing *In re C.C.C.*, No. 13-21-00371-CV, 2022 WL 710143, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.) (mem. op.)). "A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based." *Id.* (citing *In re Z.M.*, No. 02-21-00213-CV, 2021 WL 4898851, at *2 (Tex. App.—Fort Worth Oct. 21, 2021, no pet.) (mem. op.)). "By contrast, a waiver decision representing 'a reasonably principled application of the legislative criteria' generally will pass

4

muster under the abuse-of-discretion standard of review." *Id.* (quoting *In re Z.M.*, 2021 WL 4898851, at *2).

*Background Facts*

Appellant stood charged as a juvenile with committing murder on or about April 10, 2023, when he was fifteen years old, by shooting E.A.E., the sixteen-year-old victim. In May of 2023, the State filed a petition for discretionary transfer to a criminal district court, and the juvenile court held a transfer hearing in September of 2023. Appellant was sixteen years old at the time of the hearing.

The record from the transfer hearing reflects that the State offered numerous exhibits and called six witnesses in its case-in-chief. Detectives from the Midland Police Department testified that they responded to a homicide on April 10, 2023, and a witness's cell phone recording captured Appellant shooting E.A.E. Appellant was identified and apprehended for the murder the following day.

Prior to the hearing, Charles Silverman, a psychologist, performed a diagnostic study and concluded that Appellant's cognitive abilities and maturity are "average relative to the same age of his peers." In Silverman's opinion, Appellant understood the seriousness of the charge against him, and Appellant exhibited no cognitive functioning deficiencies that would impair his ability to understand the courtroom procedures and assist his defense counsel. Silverman's diagnostic impressions included moderate to severe adolescent-onset conduct disorder and cannabis use of unspecified severity. Appellant showed no developmental or intellectual disabilities, psychosis, or significant deficits in thinking and reasoning that would preclude his ability to proceed.

The Midland County Juvenile Probation Department (the Department) conducted a social evaluation and a full investigation of the alleged offense and Appellant's circumstances. At the hearing, Juvenile Probation Officer Crystal

Escalera discussed the findings of the evaluation, the Positive Achievement Change Tool (PACT) full-screen summary report, and her frequent meetings with Appellant. She testified that Appellant understood the seriousness of the charge, and because of his age and history as a runaway, the rehabilitative resources available through the Department were limited. Specifically, Appellant's juvenile supervision through the Department would end at age eighteen, and even if he were to be confined in the Texas Juvenile Justice Department or other secure placement facility, he would have to be released at age nineteen. By contrast, there is no age limit to supervision and confinement through the Texas Department of Criminal Justice, which also provides behavioral counseling programs and anger management. Finally, the Department assessed a high overall risk of re-offending due to Appellant's history and failure to comply with the Department's conditions in the past.

The juvenile court waived jurisdiction and ordered the transfer of Appellant to a criminal district court for prosecution, finding probable cause to believe that Appellant committed murder as alleged, that he was fifteen years old at the time of the offense, and that the other statutory requirements had been met. The juvenile court made specific findings regarding Appellant's sophistication, maturity, risk of re-offending, and capabilities to aid his attorney and understand the charge against him, that the public could not be protected if jurisdiction was retained, and that the juvenile justice system could not rehabilitate Appellant.

*Analysis*

*Probable Cause*

Appellant argues in his first issue that the evidence is legally and factually insufficient to support the trial court's probable-cause finding, asserting that nothing beyond mere speculation established that he committed the murder.

In evaluating the juvenile court's determination of probable cause, we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused committed the offense. *In re D.I.R.*, 650 S.W.3d 172, 179 (Tex. App—El Paso 2021, no pet.); *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "The probable cause standard embraces a practical, common sense approach rather than the more technical standards applied when assessing whether proof rises to standards such as beyond a reasonable doubt." *In re C.M.M.*, 503 S.W.3d at 702. Probable cause is based on probabilities; it requires more than mere suspicion but less evidence than that needed to support a conviction or a finding by a preponderance of the evidence. *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)).

The charging instrument alleges that Appellant committed murder by the following manner and means: (1) by intentionally or knowingly causing the death of E.A.E. by shooting E.A.E. with a firearm; and (2) by committing an act clearly dangerous to human life with the intent to cause serious bodily injury—shooting E.A.E. with a firearm—that caused his death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (West Supp. 2023).

The record reflects that on April 10, 2023, Midland Police Department Detectives Dustin Juergens and David Olvera responded to 3417 North Midland Drive for a possible homicide. Detective Olvera interviewed E.A.E.'s fourteen-year-old cousin, A.A., who was outside with E.A.E. at his apartment complex on April 10. They heard someone call out to E.A.E. and saw a male in a black hoodie. E.A.E. told A.A. that he knew the male and identified Appellant by his first name.

When A.A. saw that Appellant had a gun, she began video recording him with her cell phone. The video recording shows Appellant with his right hand in the front pocket of his black hoodie and his hoodie partially covering his face. E.A.E. and

Appellant speak for a moment, E.A.E. puts his hands up, and then begins to walk away. As E.A.E. was walking away, Appellant raised his gun, and shot E.A.E. seven times.

W.L., the getaway driver, revealed that Appellant "had a falling out" with E.A.E., so W.L. and Appellant went to E.A.E.'s apartment complex with guns knowing a shooting would occur, and W.L. saw Appellant "going '[t]rigger [h]appy.'" A photograph of the shooter that was taken from A.A.'s cell phone recording was posted on social media. W.L.'s mother called police the day after the shooting to report that the shooter in the photograph was Appellant.

Dr. Jill Urban, the forensic pathologist who performed E.A.E.'s autopsy, testified in detail about each of the seven gunshot wounds inflicted. The entry wounds were to E.A.E.'s: (1) chest on his right side close to his armpit; (2) lower chest on his right side; (3) right flank "near his right buttock"; (4) left clavicle; (5) back of the right shoulder; (6) right arm at the elbow; and (7) right thigh just below the buttock. Dr. Urban concluded that E.A.E.'s cause and manner of death was homicide by multiple gunshot wounds.

Considering the totality of the circumstances, we conclude that the record contains information sufficient to warrant a reasonable, prudent person's belief that Appellant committed the murder as alleged, and that the State presented legally and factually sufficient evidence from which the juvenile court could reasonably have concluded that there was probable cause to believe that Appellant committed the alleged offense. *See* FAM. § 54.02(a)(3); *C.M.M.*, 503 S.W.3d at 702–03. Therefore, the evidence is sufficient to support the juvenile court's finding of probable cause. We overrule Appellant's first issue.

*Section 54.02(f) Factors*

Appellant contends in his second issue that the evidence is legally and factually insufficient to support the findings made by the juvenile court pursuant to Section 54.02(f) as to: (1) the sophistication and maturity of Appellant, especially in light of his "stunted" decision-making skills; (2) his record and previous history; and (3) the protection of the public and the likelihood of rehabilitation. *See* FAM. § 54.02(f)(2)–(4). Having reviewed the record, we conclude that the evidence is sufficient to support the juvenile court's findings of the Section 54.02(f) factors. We further find no abuse of discretion in the juvenile court's waiver of jurisdiction over Appellant.

The juvenile court addressed each of the four factors enumerated in Section 54.02(f) and stated its specific reasons and findings in support of its decision to waive jurisdiction. First, Appellant has been charged with murder, an offense against a person. He does not dispute this finding.

Second, the juvenile court's determination regarding Appellant's sophistication and maturity was supported by the reports and the testimony of Escalera and Silverman. Appellant argues that his decision-making skills show a lack of sophistication and maturity, and the Department and Silverman failed to secure his school records and the records from his week-long stay at Oceans Behavioral Hospital in Abilene.

"In assessing the sophistication and maturity of the child, the juvenile court places emphasis on whether the evidence shows that the child knew right from wrong and could assist his attorney in his defense." *Bell*, 649 S.W.3d at 892. Moreover, a juvenile court has discretion to decide whether a diagnostic study is complete. *See In re B.T.*, 323 S.W.3d 158, 161–62 (Tex. 2010) (orig. proceeding); *In re J.D.*, No. 02-23-00177-CV, 2023 WL 6152620, at *5 (Tex. App.—Fort Worth Sept. 21,

2023, pet. denied) (mem. op.). Although the "complete diagnostic study" required by Section 54.02(d) has not been defined, Texas courts have recognized that "a complete diagnostic study [is] one that bears upon the maturity and sophistication of the child and relates to the questions of culpability, responsibility for conduct, and ability to waive rights intelligently and assist in the preparation of a defense." *J.D.*, 2023 WL 6152620, at *5 (quoting *B.T.*, 323 S.W.3d at 161) (internal quotation marks omitted).

Here, Silverman met with Appellant for approximately an hour and a half and reviewed documents completed by Appellant and his mother. He also administered an intelligence test. Because "weigh[ing] the evidence [is] a matter of the juvenile court's discretion," its acceptance of the diagnostic study as complete was not an abuse of discretion, and neither was considering it in making its waiver-and-transfer decision. *See Bell*, 649 S.W.3d at 893 (internal quotation marks omitted).

During Silverman's assessment of Appellant, he ascertained no intellectual disabilities, nor any "indication of a major mental health disorder." Rather, he observed that Appellant's intellectual abilities were within normal, average limits. And Escalera testified that, according to the information obtained from Appellant and his mother, Appellant was not in special education classes. Although Appellant exhibited "aggression," "impulsive" behavior, and was diagnosed with bipolar disorder and depression in September of 2022, he demonstrated a moderate level of sophistication with respect to his understanding of the charge and the legal process, the ability to assist in the preparation of a defense, and he had a high risk of re-offending. *See Bell*, 649 S.W.3d at 892; *J.D.*, 2023 WL 6152620, at *5.

With respect to Appellant's alleged "stunted" decision-making skills, Silverman refuted Appellant's counsel's claim that "difficulty regulating emotions is a lack of maturity." He clarified, "[m]any adults and many other people that we

10

consider to be mature still have difficulty regulating their emotions." Silverman testified that "maturity means" the ability "to make decisions by considering the effects it may have on other people" and "understanding what is considered to be appropriate or inappropriate behavior." According to the social evaluation and diagnostic study, Appellant "[u]nderstands there are consequences to actions," and he is "aware that sometimes he makes poor decisions." Therefore, the juvenile court had sufficient evidence to evaluate the Section 54.02(f) factors, and such evidence was sufficient to support the court's transfer order.

Third, Appellant asserts that his record and history do not weigh in favor of transfer because prior to January of 2023, he had no criminal history. But "[a] child need not have a prior record with the juvenile department for his record and previous history to weigh in favor of transfer." *In re T.B.*, No. 14-23-00346-CV, 2023 WL 6632982, at *6 (Tex. App.—Houston [14th Dist.] Oct. 12, 2023, no pet.) (mem. op.) (citing *Bell*, 649 S.W.3d at 895); *see also In re D.R.B.*, No. 01-16-00442-CV, 2016 WL 6873067, at *7 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, no pet.) (mem. op.) ("Section 54.02(f)(3) asks the court to consider the record and previous history of the child, but it does not limit the court to adjudicated delinquent behavior."). "Transfer may still be warranted even when it is a child's first referral to the juvenile system." *T.B.*, 2023 WL 6632982, at *6. "The juvenile court may consider disciplinary measures taken while the child is in the juvenile detention facility following the alleged commission of the offense in determining whether the child's record and previous history weigh in favor of transfer." *Id.*

Here, the PACT report showed that Appellant had a criminal history score of eight, which is considered high. His short period of criminal activity escalated quickly over the course of four months, from the misdemeanor assault against his father in January to felonious offenses such as unauthorized use of a vehicle,

engaging in organized criminal activity, credit card abuse, and murder. And while Appellant was detained in the juvenile detention facility following the alleged commission of the murder, he was sanctioned for "engag[ing] in mutual combat with another youth." The juvenile court was permitted to consider this evidence as weighing in favor of transfer. *See id.*

As for the fourth factor, the protection of the public and the likelihood that Appellant can be rehabilitated through services and facilities available to the juvenile court, the evidence shows that the public needs to be protected from Appellant, and that previous attempts to rehabilitate him through the juvenile justice system have failed. *See In re A.F.*, No. 11-20-00199-CV, 2021 WL 687294, at *5 (Tex. App.—Eastland Feb. 23, 2021, no pet.) (mem. op.). After Appellant was apprehended and released for the assault against his father in January of 2023, he failed to follow the court-ordered pretrial conditions and ran away from home. Appellant is alleged to have committed murder, a serious offense, during daylight hours in the open area of an apartment complex in which he shot E.A.E. seven times as he was walking away from Appellant. Furthermore, Appellant was sixteen at the time of the transfer hearing, which left him only a short period of access to the resources of the juvenile justice system for rehabilitative efforts. *See In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *13 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.) ("The age of the child at the time of the hearing is particularly relevant to the fourth factor—'the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.'").

Applying the traditional evidentiary sufficiency standards of review previously set forth, we hold that the juvenile court's findings under Section 54.02(f) of the Texas Family Code are supported by legally and factually sufficient evidence. We likewise cannot say that the juvenile court acted arbitrarily or without reference

to guiding rules or principles in transferring Appellant to the criminal district court for adult criminal proceedings in light of the evidence supporting the Section 54.02(f) factors and other relevant evidence described above. The juvenile court's decision was rationally based on the seriousness of the offense alleged, in addition to Appellant's background, sophistication, maturity, and lack of resources available to him through the juvenile justice system. We therefore conclude that the juvenile court did not abuse its discretion when it transferred Appellant's case to the criminal district court.

## This Court's Ruling

We affirm the order of the juvenile court.


JOHN M. BAILEY
CHIEF JUSTICE


February 15, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.