Opinion filed July 11, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00020-CV

_____

## IN THE MATTER OF W.J.G.L., A JUVENILE

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. J07445**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the county court at law, sitting as a juvenile court, waived its jurisdiction over W.J.G.L., Appellant, and transferred the cause to a criminal district court. *See* TEX. FAMILY CODE ANN. § 54.02 (West 2022), § 56.01(c)(1)(A), (h), (h-1) (West Supp. 2023). In a single issue on appeal, Appellant asserts that the juvenile court abused its discretion when it waived its jurisdiction over Appellant because, he contends, the evidence is insufficient to support the juvenile court's finding that there was probable cause to believe the child committed the alleged offense and that, because of the seriousness

of the offense or the background of the child, the welfare of the community required criminal proceedings.  We affirm.

*Standard of Review*

Courts designated as juvenile courts have original and exclusive jurisdiction over juvenile proceedings.  *See* FAM. §§ 51.04, 54.02.  "But the right of a juvenile offender to remain outside the jurisdiction of the criminal district court is not absolute." *Bell v. State*, 649 S.W.3d 867, 885 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd).  "A juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if certain statutory and constitutional requirements are met." *Ex parte Thomas*, 623 S.W.3d 370, 372 (Tex. Crim. App. 2021).  A juvenile court's transfer of a juvenile offender from its court to criminal court for prosecution as an adult "should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be 'protected and rehabilitated rather than subjected to the harshness of the criminal system.'" *Id.* at 376 (quoting *Hidalgo v. State*, 983 S.W.2d 746, 754 (Tex. Crim. App. 1999)).

If a child was fourteen years of age or older at the time that he is alleged to have committed a felony offense, a juvenile court may transfer the case to a criminal district court for trial, even if the offender remains a child at the time of transfer. FAM. § 54.02(a); *see Thomas*, 623 S.W.3d at 377.  Pursuant to Section 54.02(a), the juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if:

> (1) the child is alleged to have violated a penal law of the grade of felony;
>
> (2) the child was:
>
>> (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is . . . a felony

2

of the first degree, and no adjudication hearing has been conducted concerning that offense; [and]

. . . .

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

FAM. § 54.02(a).

"The State has the burden to persuade the juvenile court by a preponderance of the evidence that the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense alleged or the background of the child or both." *Bell*, 649 S.W.3d at 886. In deciding whether the preponderance of the evidence supports this third requirement of Section 54.02(a) of the Texas Family Code, the juvenile court shall consider the following non-exhaustive list of factors:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

FAM. § 54.02(f). These factors are to facilitate the juvenile court's balancing of potential danger to the public posed by the juvenile offender with the juvenile's amenability to treatment. *Bell*, 649 S.W.3d at 886. Any combination of the factors may suffice to support a waiver of jurisdiction and transfer. *In re X.S.*, 659 S.W.3d 477, 484 (Tex. App.—Texarkana 2022, no pet.).

We review a juvenile court's decision to waive its exclusive original jurisdiction and transfer the case using a two-part test. First, we review the juvenile court's specific findings of fact using the traditional evidentiary sufficiency review standard. *Bell*, 649 S.W.3d at 887; *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at *18 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (citing *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). "In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable fact finder could not reject it." *Bell*, 649 S.W.3d at 887. "If there is more than a scintilla of evidence to support the findings, then the evidence is legally sufficient." *Id.* "Under a factual sufficiency challenge, we consider all the evidence presented to determine if the juvenile court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong and unjust." *In re X.S.*, 659 S.W.3d at 484 (quoting *In re T.C.*, No. 06-21-00075-CV, 2022 WL 398419, at *3 (Tex. App.—Texarkana Feb. 10, 2022, no pet.) (mem. op.)); *see In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *8 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.) ("[W]e may review the entire record to determine whether the facts elicited sufficiently support the juvenile court's stated reason or reasons for the transfer.").

Second, we review the juvenile court's waiver decision for an abuse of discretion. *Bell*, 649 S.W.3d at 887 (citing *In re C.C.C.*, No. 13-21-00371-CV, 2022 WL 710143, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.) (mem. op.)). "A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based." *Id.* (quoting *In re Z.M.*, No. 02-21-00213-CV, 2021 WL 4898851, at *2 (Tex. App.—Fort Worth Oct. 21, 2021, no pet.) (mem. op.)). "By contrast, a waiver decision representing 'a reasonably principled application of the legislative criteria' generally will pass

4

muster under the abuse-of-discretion standard of review." *Id.* (quoting *In re Z.M.*, 2021 WL 4898851, at *2).

*Factual and Procedural History*

On April 10, 2023, the Midland Police Department (MPD) responded to a possible homicide call in Midland, Texas. Sixteen-year-old E.A.E. was discovered dead in the common area of an apartment complex. Dr. Jill Urban, a forensic pathologist, performed the autopsy. Dr. Urban noted there were seven gunshot wounds and testified that any one of them could cause serious bodily injury. Ultimately, the manner of death for E.A.E. was determined to be homicide, resulting from multiple gunshot wounds.

Appellant's mother contacted MPD Detective Dustin Juergens the day after the murder, indicating that her son was involved in E.A.E.'s death. Appellant's mother recorded a conversation with Appellant and turned the recording over to the detectives. MPD had Appellant in custody by April 12, 2023. While in custody, Appellant was provided juvenile magistrate's warnings and agreed to speak with Detective Juergens. *See* FAM. § 51.095(a)(1)(A). Appellant first denied any knowledge of or involvement with the shooting of E.A.E.; however, after Detective Juergens played the recording turned over by Appellant's mother, Appellant admitted to being at the scene. The recorded conversation between Appellant and his mother revealed that Appellant and P.Z.E. were at the scene. The two had exchanged firearms when P.Z.E. exited and Appellant remained in the vehicle. Appellant heard multiple gunshots and afterward P.Z.E. returned to the vehicle, Appellant drove them away from the scene, passing the police. Appellant told the detective that P.Z.E. and E.A.E. had "had a falling out" before the shooting. Following the interview with Detective Juergens, Appellant was handcuffed and remained in custody.

5

In May 2023, the State filed a petition for discretionary transfer to a criminal district court. The juvenile court conducted the transfer hearing on two separate dates—the first in September 2023, and the second in January 2024. Prior to the hearings, psychologist Charles Silverman conducted a diagnostic study and concluded that, relative to same-aged peers, Appellant's maturity was average, and that Appellant's cognitive abilities were "low/average . . . with the caveat that the low/average includes average -- a combination of average and slightly less than average verbal versus nonverbal processing." In Silverman's opinion, Appellant understood the seriousness of the charge against him, and Appellant exhibited no cognitive functioning deficiencies that would impair his ability to understand the courtroom procedures or assist his defense counsel. Appellant showed no developmental or intellectual disabilities, psychosis, or significant deficits in thinking and reasoning that would preclude his ability to proceed.

The State argued that Appellant acted as a party in the commission of the murder of E.A.E. The juvenile court found that there was probable cause to believe Appellant committed the offense of murder, a first-degree felony, as alleged. *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (West Supp. 2023). The juvenile court additionally found that Appellant was sixteen years old at the time of the January 2024 hearing and was fifteen years old at the time of the offense. Further, the juvenile court found that because of the seriousness of the offense and the background of Appellant, the welfare of the community required that criminal proceedings take place. The juvenile court waived its jurisdiction under Section 54.02 and transferred the case to the 238th Criminal District Court in Midland for further criminal proceedings.

## *Analysis*

In his sole issue on appeal, Appellant contends that there is insufficient evidence to support the juvenile court's finding under Section 54.02(a)(3): that there

6

was probable cause Appellant committed the alleged offense of murder and that the seriousness of the alleged offense or background of the child would require criminal proceedings to protect the welfare of the community. *See* FAM. § 54.02(a)(3).

*Probable Cause*

Probable cause exists when there are sufficient facts and circumstances to warrant a prudent person to believe the suspect committed or was committing the offense. *In re D.L.N.*, 930 S.W.2d 253, 256 (Tex. App.—Houston [14th Dist.] 1996, no writ). In evaluating the juvenile court's determination of probable cause, we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused committed the offense. *In re D.I.R.*, 650 S.W.3d 172, 179 (Tex. App—El Paso 2021, no pet.); *In re C.M.M.*, 503 S.W.3d at 701. "The probable cause standard embraces a practical, common sense approach rather than the more technical standards applied when assessing whether proof rises to standards such as beyond a reasonable doubt." *In re C.M.M.*, 503 S.W.3d at 702. "Probable cause is based on probabilities; it requires more than mere suspicion but less evidence than that needed to support a conviction or support a finding by a preponderance of the evidence." *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)).

In its petition for the discretionary transfer to a criminal district court, the State alleged that Appellant committed the offense of murder in Midland County, Texas on or about April 10, 2023. The petition alleged that Appellant committed murder by the following manner and means: (1) intentionally and knowingly causing the death of E.A.E. by shooting him with a firearm; and (2) by intending to cause serious bodily injury to E.A.E. then and there committing an act clearly dangerous to human life by shooting E.A.E. with a firearm, thereby causing the death of E.A.E. *See* PENAL § 19.02(b)(1), (b)(2).

Under the law of parties, a person may be convicted of an offense if the offense is committed by his own conduct *or by the conduct of another for which he is criminally responsible*. PENAL § 7.01(a) (West 2021). "A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Circumstantial evidence alone may be used to show that a person is a party to an offense. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006). Additionally, a defendant can be found guilty of participating as a party to an offense, even if the indictment does not explicitly charge them as a party. *Id.*

The record reflects that: (1) Appellant was present at the scene of E.A.E.'s death; (2) Appellant and P.Z.E. exchanged guns; (3) P.Z.E. and E.A.E. had had "a falling out"; (4) P.Z.E. was identified as being the shooter; (5) Appellant was aware a shooting was going to take place before it did; (6) Appellant admitted to driving himself and P.Z.E. away from the scene after the shooting; and (6) following the autopsy, Dr. Urban concluded that cause and manner of death for E.A.E. was homicide by multiple gunshot wounds.

Considering the totality of the circumstances in the light most favorable to the juvenile court's findings, we conclude that the record contains information sufficient to warrant a reasonable, prudent person's belief that Appellant committed the murder as alleged, and that the State presented legally and factually sufficient evidence from which the juvenile court could reasonably have concluded that there was probable cause to believe that Appellant committed the alleged offense as a principal or under the law of parties. *See* FAM. § 54.02(a)(3); PENAL §§ 7.01(a), 19.02(b); *C.M.M.*, 503 S.W.3d at 702–03. Therefore, we conclude that the evidence is sufficient to support the juvenile court's finding of probable cause.

8

*Section 54.02(f) Factors*

Appellant also argues that the Section 54.02(f) factors weigh against the finding that the seriousness of the offense or background of the juvenile were such that the welfare of the community requires criminal proceedings. *See* Fam. § 54.02(f). Specifically, Appellant contends that the second, third, and fourth factors weigh against certification. Having reviewed the record, however, we conclude that the evidence is sufficient to support the juvenile court's findings under the Section 54.02(f) factors. Consequently, we hold that the juvenile court did not abuse its discretion when it decided to waive its jurisdiction over Appellant.

The juvenile court, in its oral pronouncement, addressed each of the four factors enumerated in Section 54.02(f) and provided specific reasons and findings in support of its decision to waive jurisdiction. First, Appellant has been charged with murder, an offense against a person. This finding is undisputed on appeal.

Second, the juvenile court determined that Appellant's sophistication and maturity was supported by the testimony and exhibits. In particular, the juvenile court indicated that Appellant would be capable of aiding his attorney in his defense; Appellant has an adequate and appropriate understanding of the seriousness of the charges against him; and Appellant has a general intellectual functioning within the low/average range of general intelligence but without an indication of intellectual or developmental disability. *See Bell*, 649 S.W.3d at 892 ("In assessing the sophistication and maturity of the child, the juvenile court places emphasis on whether the evidence shows that the child knew right from wrong and could assist his attorney in his defense."). Moreover, a juvenile court has discretion to decide whether a diagnostic study is complete. *See In re B.T.*, 323 S.W.3d 158, 161–62 (Tex. 2010) (orig. proceeding) (per curiam); *In re J.D.*, No. 02-23-00177-CV, 2023 WL 6152620, at \*5 (Tex. App.—Fort Worth Sept. 21, 2023, pet. denied) (mem. op.). Although the "complete diagnostic study" required by Section 54.02(d) has not been

defined, Texas courts have recognized that "a complete diagnostic study [is] one that bears upon the maturity and sophistication of the child and relates to the questions of culpability, responsibility for conduct, and ability to waive rights intelligently and assist in the preparation of a defense." *J.D.*, 2023 WL 6152620, at *5 (quoting *B.T.*, 323 S.W.3d at 161) (internal quotation marks omitted).

Here, Silverman met with Appellant on June 27, 2023, and reviewed documents completed by Appellant and his mother. He also administered an intelligence test. Because "weigh[ing] the evidence [is] a matter of the juvenile court's discretion," its acceptance of the diagnostic study as complete was not an abuse of discretion, nor was it an abuse of discretion for the juvenile court to consider that study in making its waiver-and-transfer decision. *See Bell*, 649 S.W.3d at 893.

During Silverman's assessment of Appellant, he noted that Appellant had two prior mental health diagnoses: attention deficit hyperactivity disorder (ADHD) and disruptive mood dysregulation disorder (DMDD). Appellant was taking prescribed medication at the time of the evaluation, although at the time of Silverman's testimony, Appellant was taking different prescribed medication. Silverman testified that, the additions and changes to Appellant's prescribed medication had no impact on the opinions contained in his original report.

Silverman confirmed that Appellant had "504 plan accommodations" in place at school, which he testified were "based on behavioral issues and how -- at the time that they decided that he was eligible for 504, how it affects [Appellant's] school and academic functioning." Silverman agreed that the plan was a "behavioral intervention plan" that attempted to "address disruptive behavior, noncompliance and aggression that [Appellant] has displayed previously in the [classroom]." Silverman observed that Appellant's cognitive abilities were in the low to average range, which included "a combination of average and slightly less than average verbal versus nonverbal processing." Silverman testified that Appellant

10

demonstrated a clear understanding of the serious nature of the offense and the potential future consequences. In Silverman's report, he concluded that Appellant "would likely be cooperative with his legal representation and would follow along with [legal] procedures." He further concluded in the report that there was no evidence that Appellant had a developmental or intellectual disability, psychosis, or other significant deficits regarding thinking and reasoning. This testimony and the results of Silverman's report constitute sufficient evidence with regard to the second factor, and they support the juvenile court's transfer order. *See In re X.S.*, 659 S.W.3d 484 (Any combination of the factors may suffice to support a waiver of jurisdiction and transfer.).

Appellant asserts that his record and history of violations do not weigh in favor of transfer because his previous criminal history was minimal, with no formal probation or removal from his home. However, the juvenile court found that Appellant was referred to the Midland County Juvenile Probation department on two prior occasions: once on or about November 29, 2022, for the third-degree felony offense of assault on a public servant, and once on February 5, 2023, for the state jail felony offense of unauthorized use of a motor vehicle. *See* PENAL § 22.01(b)(1), § 31.07 (West 2016). Appellant points out—and the juvenile court acknowledged— that neither prior event resulted in adjudications.

Here, Appellant's PACT full-screen summary report showed that Appellant had a criminal history score of 11.0, which is considered high, and his overall risk to reoffend was also high. Appellant's criminal activity or involvement therein escalated, within a six-month period, from an allegation of assault on a public servant, to unauthorized use of a motor vehicle, to murder -- a progression in felony criminal activity that culminated in the violent loss of life. Additionally, while Appellant was detained in the juvenile detention facility following the alleged offense, he was sanctioned for five incidents: (1) inciting negative behaviors and not

following JSO orders; (2) youth on youth physical assault; (3) inciting negative behavior, harassment of another juvenile; (4) not following JSO instructions; and (5) contrary to facility regulations, having five books and a pen and pencil in his room. The juvenile court was permitted to consider this evidence as weighing in favor of transfer. *See In re T.B.*, No. 14-23-00346-CV, 2023 WL 6632982, at *6–7 (Tex. App.—Houston [14th Dist.] Oct. 12, 2023, no pet.) (mem. op.).

Appellant also contends that the juvenile court "hardly considered" the potential use of procedures, services, and facilities available for rehabilitation. Preliminarily, what pre-existing knowledge of the local tools available for rehabilitation held by the juvenile court is ignored by Appellant and what was considered and to what measure it was weighed by that court is speculation by Appellant. In this regard, Vanessa Valdez with the Midland County Juvenile Probation Department testified that the Midland County Juvenile Probation Department has a policy that the department does not make recommendations concerning juvenile certifications and transfers. As a result, she had not searched which Texas Juvenile Justice Department (TJJD) placements were available— because "[w]ith his charge, [she was] not sure . . . any secure facility would actually accept him"—nor did she look into any non-TJJD secure facilities that would accept his recommended placement. Appellant was sixteen at the time of the transfer hearing, which, in any event, would leave him less than three years of access to any available resources of the juvenile justice system for rehabilitative efforts. *See In re Z.T.*, 2021 WL 3645103, at *13 ("The age of the child at the time of the hearing is particularly relevant to the fourth factor—'the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.'"). The juvenile court found that the available services and facilities would not be able to rehabilitate Appellant at "this advanced stage of…criminal activit[y]."

12

The possibility of rehabilitation is only part of the consideration in factor four. *See* FAM. § 54.02(f) (including "the prospects of adequate protection of the public" as well as the "likelihood of the rehabilitation of the child"). In addition to its determination that the likelihood of rehabilitation weighed in favor of transfer, the juvenile court also determined that "the public could not be protected" if jurisdiction was retained "due to the serious nature of the alleged offense."

The juvenile court, as the sole judge of the witnesses' credibility and the weight to be given each witness's testimony, was free to believe—and to determine the value of—the probation officer's testimony that Appellant had been disciplined multiple times while in juvenile detention and the PACT results, which indicated that Appellant's likelihood to reoffend was high. *See Matter of T.S.*, No. 02-20-00353-CV, 2021 WL 733305, at *8 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.) (recognizing that, as the factfinder, "the juvenile court's role was to evaluate the witnesses, judge their credibility, determine who to believe or disbelieve, and weigh the evidence and any inconsistencies"). Given the five incidents that occurred while Appellant was in juvenile detention, the juvenile court could have rationally concluded that the available juvenile-justice system's services were inadequate to protect the public.

Applying the traditional evidentiary sufficiency standards of review that we previously set forth, we hold that the juvenile court's findings under Section 54.02(f) of the Texas Family Code are supported by legally and factually sufficient evidence. Likewise, we cannot say that the juvenile court acted arbitrarily or without reference to guiding rules or principles in waiving its jurisdiction and transferring Appellant to the criminal district court for adult criminal proceedings in light of the evidence supporting the Section 54.02(f) factors and the other relevant evidence described above. The juvenile court's decision was rationally based on the seriousness of the offense alleged, in addition to Appellant's background, sophistication, maturity, and

the likelihood of rehabilitation through services in the juvenile justice system. We therefore conclude that the juvenile court did not abuse its discretion when it waived its jurisdiction and transferred Appellant's case to the criminal district court.

Having concluded that the juvenile court's findings are supported by legally and factually sufficient evidence and that the juvenile court did not abuse its discretion, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the juvenile court.

W. BRUCE WILLIAMS
JUSTICE

July 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.